SPENCER IMPORTING & TRADING CO. v. UNITED STATES (No. 761).[1]

1. "CLEAR."
   That construction of the word "clear" as applied to shelled almonds will be avoided when to adopt such construction would bring a number of kindred statutory provisions into utter confusion. For a construction here, we have that enforced for many years by the Treasury Department and acquiesced in by the trade during that time; and

2. CLEAR-SHELLED ALMONDS WITH BROKEN SHELLS AND DUST.
   Clear almonds, shelled, remain almonds, though they should contain a certain amount of broken kernels, dust, and shells, and they are not to be classified generally with "nuts of all kinds." They are dutiable as clear almonds, shelled, under paragraph 280, tariff act of 1909. Paragraph 283 of that act forbids any allowance for the weight of the dust and shells.

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26800 (T. D. 31912).

[Affirmed.]

*Hatch & Clute* (*Edward S. Hatch* and *Walter F. Welch* of counsel) for appellant.
*Wm. L. Wemple*, Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

Under the tariff act of 1909 the appellants imported into this country a consignment of merchandise which was invoiced as 200 bags of sweet shelled I Bari almonds.

The collector classified the importation as clear almonds, shelled, within the provisions of paragraph 280 of that act, and assessed duty thereupon at the rate of 6 cents per pound.

The following is a copy of paragraph 280 just above cited, and also a copy of paragraph 283 hereinafter referred to:

280. Almonds, not shelled, four cents per pound; clear almonds, shelled, six cents per pound; apricot and peach kernels, four cents per pound.

283. Nuts of all kinds, shelled or unshelled, not specially provided for in this section, one cent per pound; but no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled.

The importers filed their protest to the classification of the merchandise under this paragraph and contended that the imported almonds were intermixed with such a quantity of broken kernels, dust, and shells as to forbid their classification as "clear almonds, shelled." The importers maintained that the importation did not therefore fall within the terms of paragraph 280, but should be classified under the provisions of paragraph 283 for "nuts of all kinds, shelled or unshelled, not specially provided for," and be assessed thereunder at the rate of 1 cent per pound. The

---

[1] Reported in T. D. 32201 (22 Treas. Dec., 122).

importers further contended that even if the almonds were held to be clear almonds, shelled, and therefore dutiable at 6 cents per pound, the duty should nevertheless be assessed only upon the net weight of the kernels after deducting from their gross weight the dust, shells, and other impurities intermixed with them at importation.

There were other alternative claims made by the importers in their protest, but those above set out are the ones upon which the case was heard. They may be repeated: First, that there was a certain quantity of broken kernels, dust, and shells intermixed with the imported almonds which prevented their classification as "clear almonds, shelled," and, second, that even if that classification were approved the duty provided for such clear almonds should be assessed only upon the net weight of the kernels free from impurities. This protest was heard by the Board of General Appraisers upon testimony which included also the record in the case of Henry Heide *v.* The United States, now pending in this court upon appeal. The briefs filed in the last-named case have likewise been considered as if filed in this case also. The board, upon consideration, overruled the protest of the importers, and this court is now asked to reverse that decision.

At the hearing before the board the importers tendered testimony in proof of the fact that the importation consisted, in round figures, of 64 per cent whole almond kernels, 26 per cent philopenas, 7 per cent pieces of kernels, and 3 per cent dust and shells. The philopenas are twin kernels, which are smaller than the single kernels generally found in the shells. The importer also tendered proof that the philopenas and broken pieces of kernels are marketable nuts and are used by confectioners in making almond paste, but that only the whole kernels are used in manufacturing the best grades of candy

The importers contended that this testimony was competent in support of their claim that the merchandise was not "clear almonds, shelled," and also that the testimony was both competent and necessary in making a proper assessment in event such assessment was to be computed upon the net weight of the almond kernels after deducting the weight of all impurities intermixed therewith.

The board rejected the tendered testimony upon the ground that such merchandise, namely, 64 per cent whole kernels, 26 per cent philopenas, 7 per cent pieces of kernels, and 3 per cent dust and shells would nevertheless be "clear almonds, shelled," within the purview of paragraph 280; and in this connection the board also held that under that classification the duty should be assessed upon the net weight of the importation without deduction for impurities, and

that therefore the tendered proof was relevant neither to the classification nor assessment of the merchandise.

The appellants excepted to these rulings of the board, and the issue thus effectually presented is whether or not it was error for the board to hold that the importation was "clear almonds, shelled," notwithstanding the fact that it was composed of the different elements above stated; and also whether or not it was error for the board to hold that under such a classification the merchandise should be assessed with duty at 6 cents per pound without deduction for any of the impurities contained therewith, according to the above statement.

It may be stated again that paragraph 280 provides a duty of 4 cents per pound upon almonds, not shelled, and 6 cents a pound upon clear almonds, shelled, and that paragraph 283 provides a duty of 1 cent a pound upon all nuts, shelled or unshelled, not specially provided for in the section. It is also provided in the latter paragraph that no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled.

The position of the appellants is that almonds, not shelled, are dutiable at 4 cents per pound, assessed upon both kernels and shells, and that shelled almonds are dutiable at 6 cents per pound if clear and at 1 cent per pound if not clear. Appellants contend that the present importation is not clear because of the presence of the philopenas, the broken pieces, and especially because of the dust and shells contained therewith. Therefore, according to appellants' claim as to classification, the importation is properly dutiable not at 6 cents per pound as clear almonds, shelled, but at 1 cent per pound as nuts, shelled, not specially provided for.

It may be stated as preliminary to an examination of this contention that there is nothing in the record tending to establish any technical trade or commercial meaning for the word "clear" as used in paragraph 280; and also that no effort was made to prove that the percentage of philopenas, broken kernels, or dust and shells contained in the importation is unusual or extraordinary for such merchandise. Nor does the record give any substantial reason for a belief that the expression "clear almonds" had reference to the product of any particular country, nor to shipments from any single port, nor to any especial variety or varieties of almonds.

In entering upon an inquiry into appellants' claim the mind is startled to perceive the anomalous result which would follow its adoption. According to that claim, if a package of shelled almonds be free from imperfect kernels and from impurities, such almonds are dutiable at 6 cents per pound, but if the package contains also

an admixture of imperfect kernels or of impurities, even though usual in such importations, the merchandise is no longer dutiable as almonds and does not fall within the almond paragraph at all, but in such case the almonds are to be classified simply as nuts not specially provided for, and the rate of duty becomes 1 cent per pound instead of the duty of 6 cents per pound first provided for.

The obvious unreasonableness of such a result constitutes of itself the most cogent argument against its adoption. The present case becomes a concrete illustration of this statement. The net weight of the present importation, without deduction for impurities, is 21,134 pounds. At 6 cents per pound the duty thereon would be $1,268.04; at 1 cent per pound the duty would be $211.34. There is nothing in the record which gives any weight or importance to the presence in the importation of philopenas and broken kernels; the dust and shells contained therein furnish the only real basis for appellants' claim. As seen above, then, according to appellants' claim, the presence of the 3 per cent of dust and shells in with the almonds would have the effect of reducing the duty assessed upon the importation more than $1,000. The duty at 6 cents per pound upon the percentage of dust and shells contained in the importation, if the assessment be computed without deduction therefor, would be $38.04; that is to say, the present importation contains impurities which if it be classified as "clear almonds, shelled," will cause the importer to pay $38.04 duty upon the weight of the impurities, if that weight is not deducted in the assessment; and because of that fact the entire classification is changed so that the duty upon the importation is reduced in a sum exceeding $1,000. It would certainly seem more reasonable to conclude that the weight of the impurities should be deducted from the assessable weight of the importation, and that the "clear" residue should thereupon be classified and assessed as if free from the impurities, in which event the presence of the impurities in the merchandise would neither increase the importers' payment nor diminish the Government's assessment.

In brief, however, according to appellants' contention, the present importation would be "clear almonds, shelled," and bear duty in the sum of $1,268.04, except for the fact that there are impurities contained in the packages amounting to 3 per cent of their weight, and that because of that fact the importation should be classified as nuts and the duty assessed thereon at $211.34. It must be apparent that this result would follow appellants' interpretation alike if the impurities remain in with the almonds after their first cleaning or are intentionally added to them for importation after they have once been perfectly cleaned. And it also follows that almonds, not shelled, would continue, if imported, to bear 4 cents per pound duty upon

both kernels and shells, whereas the shelled kernels alone if inter-mixed with 3 per cent of dust and shells would bear duty at the rate of 1 cent per pound only. The shells inclosing the unshelled almonds would in such an importation bear four times the duty imposed upon an equal weight of the shelled kernels, if only the kernels be not perfectly separated from all impurities. According to this theory, the application of foreign labor to the article before importation reduces instead of increases the duty which the tariff act imposes upon it.

The history and meaning of the word "clear" as used in paragraph 280 are obscure and doubtful, and in giving the word its interpreta-tion the court should not adopt a meaning which makes the legisla-tion upon this subject so inexplicable as is the result set out in the foregoing illustration. The court may not be authorized to give great weight to its own views concerning the justice or policy of any given legislation, and such considerations should in no case lead the court to depart from a clear expression of the legislative purpose. But where a given construction causes a number of kindred statutory provisions relating to the same subject to become mutually irregular, inconsistent, and even fantastic, it becomes the court's duty to avoid that construction, for these consequences sufficiently demonstrate that such construction does not correctly express the real legislative intention embodied in such provisions. The effect which would follow the adoption of appellants' claim therefore becomes important in discovering the true meaning in which the contested word is used in the enactment.

The phrase "clear almonds, shelled," first appeared in the tariff act of 1890. Before that time successive tariff laws provided simply for "almonds, shelled." The present phrase is found in the tariff acts of 1890, 1894, 1897, and 1909. As has been stated, the term was not a trade term, and there is nothing in the published literature of tariff legislation which shows its origin or intended application. But it is established by the testimony that under the tariff act of 1890, as under the preceding one, all shelled almonds alike were classified as such under the almond paragraph; and in practice the enactment of 1890 received no different interpretation because of the addition of the new word "clear." The testimony shows that this practice was continued generally and without protest until within the last several years, covering a period of about 17 years. During the 21 years which have elapsed since the first appearance of the word "clear" in the tariff act of 1890 the Government has always collected duty upon such importations as that at bar at the rate provided for "clear almonds, shelled," and, as above stated, this classification was not protested during the first 17 years of that period and during this

entire period almonds, not shelled, have paid duty at 4 cents per pound. These facts afford strong evidence that the contemporaneous trade to whom the provision was addressed and by whom it was best understood did not place upon it the interpretation now contended for by appellants. In many cases involving the interpretation of doubtful provisions such contemporary construction embodied in the action of the Government and the acquiescence of the trade becomes of itself a controlling authority. This applies with especial force to the case at bar. During all the years in question very large consignments of almonds have been continuously shipped to this country, which would have been controlled by the question herein made. And during all that time almonds, not shelled, have been largely imported, paying without protest a duty of 4 cents per pound, whereas according to appellants' present contention such almonds could have been shelled before importation and the duty upon them thereby reduced to 1 cent per pound, provided only the same were not entirely cleaned of all accompanying impurities.

Another consideration which deserves great weight is the fact that the several tariff laws which followed the act of 1890 continued the language of the almond paragraph unchanged except as to the rate of duty, notwithstanding the interpretation which was placed upon it by the Government as evidenced by the practice above stated. In the year 1908 a case was begun involving the question which is presented in this case and the board decided the issue against the protestants. That decision was unreversed at the time of the enactment of the present act, although the case had already been appealed. As a seeming answer to the importers' claim, however, there was incorporated in the act of 1909 an addition to paragraph 283, in the following words, "but no allowance shall be made for dirt or other impurities in nuts of any kind, shelled or unshelled." The term "allowance" does not distinctly apply to the classification of the article, but appearing as it did during the pendency of the mentioned litigation, it seems to imply a legislative purpose that the presence of impurities with the almonds or other nuts shall not affect or control the duty which should be assessed upon them.

These considerations lead to the belief that the word "clear" as first used in the tariff act of 1890 was intended to emphasize the word "shelled," or was intended to apply to some mixture of shelled and unshelled almonds such as is altogether foreign to the facts in this case. As has just been stated, the case involving the same issue as this arising under the tariff act of 1897, was appealed from the board's decision to the circuit court just prior to the enactment of the present tariff act. That court at a time subsequent to the enactment of the present law held against the Government and reversed the decision of

the board.   Heide v. United States (175 Fed. Rep., 316).   The syllabus of the decision reads as follows:

1. CUSTOMS DUTIES (No. 30*)—CLASSIFICATION—CLEAR ALMONDS—"CLEAR."
   In tariff act July 24, 1897 (c. 11, No. 1, Schedule G, par. 269, 30 Stat., 172; U. S. Comp. St., 1901, p. 1651), the provisions for "clear" shelled almonds refers to nuts that are practically and substantially free from shells, dust, and dirt, and after being divested of their outer covering are fairly free from that covering.

2. CUSTOMS DUTIES (No. 12*)—CONSTRUCTION—PROTECTIVE CHARACTER OF
      TARIFF ACT.
   Since the tariff is enacted on protective lines, it is proper to take into consideration, in construing the law, the fact that certain grades of an imported commodity are the only ones that come into competition with domestic products.

It is stated by the appellant in the present case that the merchandise involved in the cited case was similar to the importation now at bar.   It would follow that the circuit court in effect found that such almonds as these are not "substantially free from shells, dust, and dirt," nor "after being divested of their outer covering are fairly free from that covering."   This court does not therefore reach the same conclusion as that reported in the foregoing decision.

For the reasons above suggested the court concludes that the importation was properly classified as "clear almonds, shelled," and was dutiable at 6 cents per pound under the provisions of paragraph 280; and that under the inhibition of paragraph 283 there should be no deduction from the weight of the importation because of the dust and shells in the assessment of duty.

The decision of the board is therefore *affirmed*.