(C. D. 893)

DAVIS TURNER & CO. *v.* UNITED STATES

United States Customs Court, First Division

(Decided November 15, 1944)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

OLIVER, Presiding Judge: This is a protest against the action of the collector in assessing duty on certain ferrocerium (flints) at 1 cent each and 50 per centum ad valorem under the provisions of paragraph 1527 (c) (2), Tariff Act of 1930, as parts of articles [cigar or cigarette lighters] designed to be carried on or about the person, valued at over 20 cents per dozen pieces and under $5 per dozen pieces. The chief claim of plaintiff is that they are properly dutiable under the *eo nomine* provision for ferrocerium at $2 per pound and 25 per centum ad valorem (paragraph 302 (q)). The shipment covered two sizes of ferrocerium, 3.0 by 5.0 mm. and 2.6 by 5.0 mm. The 3.0 by 5.0 mm. size was classified as ferrocerium and is not involved in the present case. The 2.6 by 5.0 mm. size was classified as parts of cigar lighters as set forth above. It is alternatively claimed that should these flints be held to be parts of pocket lighters, then they should pay the same total rate of duty as the lighters of which they are parts, which, on the basis of 1 cent each and 50 per centum ad valorem, amounts to 110 per centum ad valorem. Should neither of the aforementioned claims be sustained, plaintiff claims the merchandise to be properly dutiable at 80 per centum ad valorem under the provisions of paragraph 1527 (d) as "Stampings * * * and other materials of metal" from which the enumerated articles (cigar lighters) are manufactured. Plaintiff also claims that the collector's classification constitutes an illegal change of administrative practice in that the notice of change of ruling required to be given by the provisions of section 6 of the Customs Administrative Act of 1938, where such change results in the imposition of a higher duty, was not given.

The statutes involved in the present controversy, insofar as pertinent, are as follows:

PAR. 302 (q) Ferrocerium and all other cerium alloys, $2 per pound and 25 per centum ad valorem.

PAR. 1527. (c) Articles valued above 20 cents per dozen pieces, designed to be * · * * carried on or about or attached to the person, such as and including * * * cigar lighters * * * and like articles; all the foregoing and parts thereof * * *

*    *    *    *    *    *    *

(2) composed wholly or in chief value of metal * * * 1 cent each and in addition thereto three-fifths of 1 cent per dozen for each 1 cent the value exceeds 20 cents per dozen, and 50 per centum ad valorem.

This provision was amended by the trade agreement with France (T. D. 48316), effective June 15, 1936, by reducing the duty on articles "valued above $5 per dozen pieces" to:

⅗¢ each and ⅜¢ per doz. for each 1¢ the value exceeds 20¢ per doz., and 25% ad val.

This provision was further amended by the trade agreement with the United Kingdom (T. D. 49753), effective January 1, 1939, reducing duty on cigar and cigarette lighters "valued above $5 per dozen" to:

½¢ each and ³⁄₁₀¢ per doz. for each 1¢ the value exceeds 20¢ per doz. and 25% ad val.

Section 6 of the Customs Administrative Act of 1938:

SEC. 6. Section 315 of the Tariff Act of 1930 (U. S. C., 1934 edition, title 19, sec. 1315) is hereby amended by deleting the proviso thereof, changing the colon preceding such proviso to a period, and adding at the end of such section the following: "Insofar as duties are based upon the quantity of any merchandise, such duties shall, except as provided in paragraph 813 and section 562 of this Act (relating respectively to certain beverages and to manipulating warehouses), be levied and collected upon the quantity of such merchandise at the time of its importation. No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties."

The trade agreements with both France and Great Britain (T. D. 48316 and T. D. 49753) reduced the rate of duty only on such articles as are valued *over* $5 per dozen [pieces]. Therefore, to be dutiable as assessed, the articles (cigar lighters) of which these flints are claimed to be parts must be valued at over 20 cents per dozen and under $5 per dozen pieces.

The numerous exhibits in this case were unfortunately damaged by fire in the sample room while in the custody of the court. Plaintiff's exhibit 1, a sealed tin can of the imported ferrocerium flints, 2.6 by 5.0 mm., taken from the importation here under consideration, was scorched and any labels which may have been on the can were de-

stroyed. Otherwise the can and its contents (to which further reference will be made) were apparently undamaged.

Plaintiff's illustrative exhibit A, a small container of five flints, 2.6 by 5.0 mm. on display card, was destroyed by the fire.

Plaintiff's illustrative exhibit B, a toy battleship, was burned but is intact.

Plaintiff's illustrative exhibit C, a toy airplane, was burned but is intact.

Plaintiff's illustrative exhibit D, a toy gun, was burned but is intact.

Plaintiff's illustrative exhibit F, a pocket lighter retailing at 25 cents, was burned but is intact.

Plaintiff's illustrative exhibit G, a pocket lighter retailing at 15 cents, was burned but is intact.

Defendant's illustrative exhibit H, a packet of two flints, was destroyed.

Defendant's illustrative exhibit I, a refill for battleship sparker, was destroyed but replaced on agreement between counsel.

Plaintiff's illustrative exhibit J, a letter, was destroyed.

Plaintiff's illustrative exhibit K, an envelope containing flints, was destroyed.

Defendant's illustrative exhibit L, an envelope containing two flints and one wick, was destroyed.

Defendant's illustrative exhibit M for identification, an advertisement, was destroyed.

Defendant's illustrative exhibit N, advertising matter, was destroyed.

Defendant's illustrative exhibit O, sample of 2.6 by 5.0 mm. flints, was destroyed but replaced on agreement of counsel.

All the damaged samples were re-marked in presence of counsel to conform to the record. It is to be regretted that this fire destroyed some and damaged others of the exhibits, but this fact does not interfere with the ability of the court to determine the issues here presented.

The real party in interest as plaintiff herein is the Universal Lamp Co., and to avoid confusion, it will be referred to as plaintiff hereinafter.

The record conclusively establishes, and it is not disputed, that the imported merchandise is ferrocerium, which is *eo nomine* provided for in paragraph 302 (q) of the Tariff Act of 1930.

A very full record was made herein. Plaintiff introduced the testimony of two witnesses, its president, and sales manager. The Government produced eight witnesses, among them being buyers and executives from chain cigar stores, manufacturers of ferrocerium flints, manufacturers of sparking toys, manufacturers of pocket cigar lighters, and packers and distributors of ferrocerium flints.

From the entire record, which we deem it unnecessary to analyze here in great detail, we find that ferrocerium is imported in bulk only in the form of broken pieces similar to the flints now before us. It is bought and sold as ferrocerium or ferrocerium flints. On the present entry, two sizes of this material were imported, one 3.0 by 5.0 mm., which was classified for duty under the *eo nomine* provision for ferrocerium in paragraph 302 (q), Tariff Act of 1930, and is not here before us. The second size of this same material on this entry was 2.6 by 5.0 mm. and it was classified as parts of articles designed to be carried on the person (cigar lighters) valued at over 20 cents per dozen pieces and under $5 per dozen pieces. Ferrocerium flints are used only for sparking purposes in such articles as pocket and table lighters, in special novelties of which cigar lighters are a part, and in toys where a sparking effect is desired such as to simulate the firing action of guns. Imported flints as well as those produced in this country are sold in bulk to manufacturers of lighters. In addition, large numbers are repacked in small containers of several flints each, and, in some cases, flints and wicks are packed together for eventual retail as refills. It also seems clear that while these refill flints may be readily inserted in lighters, that in the case of some toys, a new flint cannot be inserted or if so, not without considerable difficulty because of certain manufacturing obstacles. The record does establish that these flints are necessary to enable a cigar lighter, whether cheap or expensive, to function as a lighter. Without the flint, a lighter, even though supplied with fuel and wick, will not create a flame, i. e., function as a lighter. It also appears that this particular size (2.6 by 5.0 mm.) is the standard size for all cigar lighters although one of the lighters selling at over $5 per dozen ("Ronson") uses 2.6 by 6 or 7 mm., thus giving a longer sparking life. It seems that this longer flint cannot be used in other lighters but the standard size (2.6 by 5.0 mm.) can be used in the "Ronson" lighter as the diameter is the important factor. The Government witnesses stated positively that the toys in evidence (illustrative exhibits B, C, and D) did not use this particular size (2.6 by 5.0 mm.). The record also establishes that ferrocerium is a combination of two metals, iron and cerium. It is produced in long thin rods which are broken into the small flint sizes. The fact that the long rods are broken into small pieces before importation does not change the status of the product for tariff purposes. These flints are ferrocerium and not manufactures of ferrocerium. (*Universal Lamp Co.* v. *United States,* 57 Treas. Dec. 562, T. D. 43963.)

These flints are used in cigar lighters valued at under $5 per dozen pieces and in lighters valued at over $5 per dozen. There are no lighters valued at less than 20 cents per dozen pieces. It seems that at least one of the imported 1-kilo sealed cans was opened by the ex-

aminer. The flints in this can were apparently counted and found to number 4,496. On this basis, duty was assessed on the contents of *all* the cans containing flints of this diameter on a unit basis on the assumption that each can contained that exact number of flints. They are bought by weight, shipped in bulk in sealed containers, invoiced by weight and, when held dutiable as ferrocerium, are assessed on a weight basis (paragraph 302 (q)). These flints are used in the condition in which imported. They are not further processed in any manner. It seems that the 3.0 by 5.0 mm. size in the same shipment, which was assessed for duty as ferrocerium, and is therefore not involved in this case, was used in miners' lamps.

While the question of whether the cheaper or the higher priced lighters sold in the greater volume is not an issue in this case, it is interesting to note that one of the Government witnesses (Harris), a large manufacturer of the expensive lighters ("Ronson"), testified that he was of opinion that the cheaper lighters sold in the greater quantity. He stated, as to the year 1939, (R.165):

A. * * *. In 1939 there was a sort of a much better balance between the lower priced lighters and the higher priced lighters.

and that the same condition prevailed in 1938.

The subject of ferrocerium flints has been before our courts on several occasions since the provision for this material first appeared in the dutiable provisions of the Tariff Act of 1922 (paragraph 302). In 1924, this court had before it an importation of individual packages each containing several flints and a wick. They were assessed under paragraph 1428 of the Tariff Act of 1922 as parts of metal combination pencils designed to be carried on or about the person. They were claimed free of duty as flints (paragraph 1577). Plaintiff conceded they were chiefly used in mechanical pencils. There was the presumption arising from the collector's classification that they were designed to be worn on the person. This presumption was not challenged. There was no claim for classification as ferrocerium so the issue now before us was not there before the court. The classification of the collector was sustained. (*Karl Offer* v. *United States*, 45 Treas. Dec. 774, T. D. 40261 (G. A. 8821).)

In 1928, the court for the first time had before it the issue of the correct classification of ferrocerium flints in bulk, the plaintiff therein being the party in interest in the present case (*Universal Lamp Co.* v. *United States*, 53 Treas. Dec. 356, T. D. 42686). The issue there was between the *eo nomine* provision for ferrocerium in paragraph 302, Tariff Act of 1922, and the free provision for "flint, flints, and flint stones, unground" in paragraph 1577. The size of the ferrocerium flints there imported, incidentally, was 2.8 by 5 mm. In that decision the court first found these flints to be manufactures of ferrocerium and held them, by commercial designation, to be free of duty as

flints. A motion for rehearing was granted and on the rehearing (April 1930) the court reversed itself and held these small flints to be properly dutiable as ferrocerium. (*Universal Lamp Co.* v. *United States*, 57 Treas. Dec. 562, T. D. 43963.)

The question was again considered in 1930 (*Baltimore & Ohio Railroad Co.* v. *United States*, 58 Treas. Dec. 1155, Abstract 14067). The merchandise there consisted of small glass tubes each containing 6 ferrocerium flints and a wick. They were returned for duty as parts of articles designed to be carried on or about the person (paragraph 1428, Tariff Act of 1922). The protest was on the flints only, claiming them properly dutiable as ferrocerium (paragraph 302). The flints there were described as small pieces of ferrocerium used for various purposes in miners' lamps, gas lamps, etc., being the same in all material respects as the flints in the *Universal Lamp Co.* case, *supra*. They were held properly dutiable as ferrocerium.

In 1931, our court had before it a similar article of merchandise consisting of a glass vial containing a wick and several flints (*Frischer Co., Inc.* v. *United States*, 59 Treas. Dec. 1530, Abstract 15002). They were assessed as parts of articles designed to be worn on the person (paragraph 1428, Tariff Act of 1922) and were claimed properly dutiable as parts of smokers' articles (paragraph 1454, Tariff Act of 1922). The record in that case established that the flints were used "in connection with table lighters and gas lighters and things of that nature" and were sold to cigar and smokers' articles stores. The flints were analyzed and the analyst reported them to be in chief value of "flint." *No claim was made for classification under the eo nomine provision for ferrocerium.* The court sustained the protest holding the articles properly dutiable as parts of smokers' articles.

Subsequently (1933), this same type of merchandise, a wick and flints in an individual package, was again brought before the court in *L. Greenberg & Son* v. *United States* (63 Treas. Dec. 1233, Abstract 22788). Here the classification was again under paragraph 1428 of the Tariff Act of 1922 as parts of articles designed to be worn on the person. The plaintiff claimed the items properly dutiable separately, the flints under paragraph 302 as ferrocerium and the wicks as such under paragraph 913. The court held that, upon the record in that particular case, the presumption of correctness attaching to the collector's classification had not been overcome and that as these articles were chiefly used as parts of cigar and cigarette lighters and as the evidence was conflicting, they would be presumed to be chiefly used in pocket lighters "designed to be worn on apparel or carried on or about or attached to the person." There was no issue there as to the *value* of the lighters. The case was decided on the theory that plaintiffs had not overcome the presumption of correctness attaching to the collector's decision. The court did not discuss the question

of whether these flints were more specifically provided for under the *eo nomine* provision for ferrocerium in paragraph 302. The court was divided. Judge Brown dissented, stating in part that "the ferrocerium portion would seem to be more specifically described in paragraph 302 and the cotton or other fiber in paragraph 913."

Subsequently (1940), our appellate court had under consideration on appeal from this court, a decision on an article described as an "inlay," being a metal cylinder to which was permanently attached a wheel, a wick, and a piece of flint (*Greenberg & Josefsberg* v. *United States*, 28 C. C. P. A. 138, C. A. D. 135). The issue was between parts of articles designed to be worn about the person (paragraph 1527 (c) (2), Tariff Act of 1930) and parts of smokers' articles (paragraph 1552), or alternatively, as articles of metal, not specially provided for, under paragraph 397. They were held to be complete units, finished parts for cigar lighters, and the evidence did not establish that they were not such parts. The question of the ferrocerium provisions in paragraph 302 (q) was not in issue.

The Government contends that the decision of this court in *Alfred Dunhill of London* v. *United States*, decided in 1938 (Abstract 37558, 73 Treas. Dec. 1093), is controlling on the main issue in the present case. The merchandise in this *Dunhill* case consisted of 10 flints packed in a hard rubber container. This article was classified under paragraph 1527 of the Tariff Act of 1930, presumably as parts of articles designed to be worn on the person. The plaintiff claimed it to be properly dutiable as ferrocerium (paragraph 302 (q)) or under paragraph 1527 (d), presumably as "other materials of metal * * * suitable for use in the manufacture of any of the foregoing articles in this paragraph" (cigar lighters), or under paragraph 397, the blanket provision for manufactures of metal. In this case the plaintiff's witnesses testified that these flints were used in cigarette lighters designed to be carried about the person and were considered a necessary part of the cigar lighter which would not work without them. No proof was submitted in support of the plaintiff's claims and *the plaintiff did not even establish that these flints were ferrocerium.*

We are of opinion that while all of the above cases are helpful, none of them is controlling in the present case.

The main question before us herein is whether these ferrocerium flints are parts of articles designed to be worn on or about the person (cigar lighters) valued at over 20 cents per dozen pieces and under $5 per dozen pieces (paragraph 1527 (c) (2)), Tariff Act of 1930, as amended by trade agreement with France, T. D. 48316, and the trade agreement with the United Kingdom, T. D. 49753, and if so, whether they are more specifically provided for as ferrocerium in paragraph 302 (q) of the present tariff act.

We are convinced that plaintiff has established that this particular

size (2.6 by 5.0 mm.) is used in table lighters and in pocket lighters valued at both less than $5 per dozen pieces and over $5 per dozen pieces, and in sparking toys, and that such uses are substantial and not fugitive. Large quantities of these flints are sold annually. What the total sales are does not appear in the record. Regardless of the source through which these flints are eventually offered at retail to users, the importer or domestic buyer in bulk has no way of determining for what purpose the ultimate buyer purchases them. It could be as a refill for a cheap or for an expensive pocket lighter, or for a desk lighter, or for a toy. It is evident that substantial numbers are also used in lighters valued at over $5 per dozen. There is nothing about these flints, as imported, that dedicates them to use as a part of any particular article.

The question of what is a "part" of an article has frequently been the subject of customs litigation. In *United States* v. *Willoughby Camera Stores, Inc.* [1933], 21 C. C. P. A. 322, T. D. 46851, the court said (page 324):

> It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article* * * *. [Italics quoted.]
>
> *The mere fact that two articles are designed and constructed to be used together, does not necessarily make either a part of the other.* [Italics ours.]

In *United States* v. *Kriss Kross Corp.*, 24 C. C. P. A. 1335, T. D. 48607, certain small knurled wheels used in lighters were before our appellate court on appeal. The importer therein contended that these articles were not parts of cigar lighters referring to:

> * * * the well-settled principle that "An article not an actual constituent of a manufacture cannot be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture," * * * citing *United States* v. *American Bead Co. et al.,* 9 Ct. Cust. Appls. 27, T. D. 37873.

The court noted, however, that there was nothing in the record showing these wheels were "used or *appropriate for use* other than as parts of cigar or cigarette lighters." [Italics ours.]

In the *American Bead Co.* case (9 Ct. Cust. Appls. 27/29, T. D. 37873) the court said:

> * * *. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a *particular completed whole,* it can not be regarded as a part of any specified manufacture. [Italics ours.]

It has almost consistently been held that a part must have been manufactured and dedicated solely for use on a particular article

*and to be useful for no other purpose. United States* v. *Herman H. Sticht & Co.*, 22 C. C. P. A. 40, T. D. 47048; *Steel, Inc.* v. *United States*, 24 C. C. P. A. 423, T. D. 48872; *United States* v. *Riga*, 171 Fed. 783; *United States* v. *National Importing Co. et al.*, 12 Ct. Cust. Appls. 186, T. D. 40169; *Michelson & Sternberg, Inc.* v. *United States*, 10 Cust. Ct. 239, C. D. 762. To be dutiable as a "part" of an article, the item claimed to be such must be clearly identified with such article.

In *Harding Co. et al.* v. *United States*, 23 C. C. P. A. 250, T. D. 48109, our appellate court had before it the question of whether certain asbestos brake lining was "parts of automobiles." The court said (page 253):

Running through most of the decisions pertinent to the inquiry here, it is made clear that before imported merchandise shall be regarded as parts of an article *the identity of the individual article must be fixed with certainty.* [Italics quoted.]

The ferrocerium flints here before us have no special characteristic that makes them suitable for use only as parts of articles designed to be carried on the person, valued at not over $5 per dozen pieces. On the contrary, it has been shown that they actually were used, and were appropriate for use, on other articles. Similar flints are made in this country and any piece of ferrocerium of proper diameter and length could be used in any lighter.

Every item essential to the use for which an article is designed is not necessarily a "part" thereof even though a "part," to be such, must be essential to the article. It would not be seriously contended that the lighting fuel used in these lighters would be dutiable as a "part," nor would the ordinary loose cotton with which the interior of the lighter is packed and which holds, by saturation, the lighting fluid. Yet both these items are essential to permit the lighter to perform the function for which it was designed.

The ferrocerium flints before us were never bought or sold at wholesale as "parts" of cigar lighters, but as "flints" or "ferrocerium flints." The importer in the case at bar, so far as appears from the record, was not a manufacturer of lighters or of any other articles using these flints. It imported them in bulk, repacked them in small packets, and sold them to distributors for ultimate sale to the retail trade. It also sold them in bulk to manufacturers of various types of lighters and toys.

One of the closest analogies to the merchandise at bar would seem to be phonograph needles which were the subject of a decision of this court in *Landay Bros.* v. *United States* (28 Treas. Dec. 235, T. D. 35151), and to which case our attention is directed by Government counsel. The phonograph needles provide the contact between the record and the sound box without which the phonograph could not perform the function for which it was designed, namely, the conversion

of the sound waves on the record into sound. In like manner, the flint in the lighter provides the connecting link between the knurled wheel and the wick, and supplies the sparks without which the lighter could not perform the function for which it was designed. In the *Landay* case, *supra*, the court held the needles to be parts of phonographs. There are, however, two important points of difference between the *Landay* case and the case at bar. The phonograph needles could not be used for any other purpose and the Tariff Act of 1909, under which the *Landay* case was tried, contained no provision for "needles for phonographs." The issue there was between the general provision for manufactures of wire (paragraph 135) and "Phonographs * *. * or parts thereof" (paragraph 468). In the case at bar the flints could be and actually were used in articles other than those designed to be carried on the person and valued at over 20 cents and under $5 per dozen pieces, and the 1930 act does have an *eo nomine* provision for ferrocerium. In the Tariff Act of 1922 an *eo nomine* provision for "needles for phonographs" was added (paragraph 1444). This was carried into the Tariff Act of 1930 (paragraph 1542). It is safe to assume that if phonograph needles were imported either under the Tariff Act of 1922 or 1930, there would not be any question but that they would be dutiable under the *eo nomine* provision therefor rather than as parts of phonographs, notwithstanding the decision in the *Landay* case, *supra*.

In the present case even if we were to assume that these ferrocerium flints were "parts" of cigar lighters designed to be carried on the person, etc., under paragraph 1527 (c) (2), they would, notwithstanding, be properly dutiable as claimed under the more specific *eo nomine* provision of paragraph 302 (q). As between two such provisions the *eo nomine*, being the more specific, will prevail. As was said in *Levi, Sondheimer & Co.* v. *United States*, 7 Ct. Cust. Appls. 447, T. D. 37012:

* * *. In applying the *eo nomine* rule the question always is which of the competing paragraphs more closely and accurately describes the merchandise.

There is a question as to whether, in a tariff sense, these flints are parts of pocket cigar lighters. There is no question but that they are ferrocerium, *eo nomine* provided for in paragraph 302 (q).

In *Decorated Metal Manufacturing Co. (Inc.)* v. *United States et al.*, 12 Ct. Cust. Appls. 140, T. D. 40061, the merchandise was typewriter ribbon spools. The issue was between the general provision for manufactures of metal (paragraph 399, Tariff Act of 1922) and the provision for parts of typewriters (paragraph 1542). The court noted that these spools were generally and uniformly called "ribbon spools" or "typewriter ribbon spools" but that this did not imply that they were not also known as parts of typewriters. The court states (page 143):

\* \* \*. It is not infrequent for separate parts of machines to bear particular names of their own, without ceasing to be regarded as parts of the completed machines. In such instances the specific names would of course prevail over the general ones if they appeared in competition in a given tariff provision, but in the absence of a specific enumeration the article would be governed by the next most applicable provision to which it would respond. *In the present case for example if the tariff act contained a specific enumeration of ribbon spools or typewriter ribbon spools, as well as that for parts of typewriters, the former would of course control.* [Italics ours.]

When the Congress first included ferrocerium as a dutiable item in paragraph 302 of the Tariff Act of 1922 (and reenacted the provision in paragraph 302 (q) of the Tariff Act of 1930), it will be assumed it was not doing a vain and useless thing but intended exactly what it said, namely, that the *product* here before us (not any particular size thereof) should be subject to the specified duty of $2 per pound and 25 per centum ad valorem. The exaction of any duty beyond that rate, which was obviously considered to afford ample protection to the American manufacturers of this material, is excessive and not in conformity with the expressed intent of Congress. To ascertain the intent of Congress has always been the master rule of construction in customs litigation (*United States* v. *Clay Adams Co., Inc.*, 20 C. C. P. A. 285, T. D. 46078).

There being no dispute as to the importation being ferrocerium, there is no plausible reason to believe that Congress intended one size to be dutiable as parts of these particular articles (cigar lighters) rather than under the terms of the provision specifically provided to cover them (paragraph 302 (q)). This would be anomalous. Adopting the language of the court in the *Clay Adams* case, *supra*, "anomalies of this kind must be avoided if the language permits." Here, as in the cited case, the language not only permits the avoidance of such an anomalous result but we think compels it.

In the instant case the language used by Congress in paragraph 302 (q) is free from ambiguity. It is specific and all-inclusive when it refers to ferrocerium without limitation of any nature. When Congress designates an article without limitation, that designation will generally include the article in all its forms in commerce unless a contrary legislative intent appears (*United States* v. *General Hide & Skin Corp.*, 11 Ct. Cust. Appls. 78, T. D. 38731).

It will be presumed that Congress intended that which it stated in plain, unambiguous language unless the application of that which seemed clear would produce results that are "ridiculous, absurd, and manifestly unjust" (*United States* v. *Palm, Fechteler & Co.*, 4 Ct. Cust. Appls. 1, T. D. 33195). The court there said (page 2):

The rule that ordinarily the statute itself furnishes the best and safest guide to its interpretation and that the legislature will be presumed to have intended to mean what it has plainly expressed is so well settled that the citation of authorities is unnecessary.

In the case at bar the assessment of duty under the *eo nomine* provision of paragraph 302 (q) as claimed would carry out the intent of Congress and would be reasonable and commercially logical. The interpretation sought by the imposition of duty under paragraph 1527 (c) (2) would seem to be "ridiculous, absurd, and manifestly unjust." It would seem inconsistent to assess one size of these flints at a pound rate and another size at a unit rate. A construction leading to inconsistent results should not be adopted unless it was manifestly so intended by Congress (*Chicago Watchman's Clock Works* v. *United States*, 4 Ct. Cust. Appls. 105, T. D. 33376). The very fact that a certain construction of a statute produces an unreasonable result is, of itself, a reason why such construction should not be adopted. (*Spencer Importing & Trading Co.* v. *United States*, 2 Ct. Cust. Appls. 444, T. D. 32201.)

That Congress intended to cover these ferrocerium flints in paragraph 302 (q) is further indicated by the sanction the legislature gave to the judicial interpretation of this court. Articles similar in all material respects to those now before the court (except that the size was reported to be 2.8 by 5.0 mm.), were held to be dutiable under the *eo nomine* provision for ferrocerium (*Universal Lamp Co.* v. *United States*, 57 Treas. Dec. 562, T. D. 43963). This decision was handed down in April 1930 and Congress is presumed to have had knowledge of it.

When the Congress enacted the Tariff Act of 1930 they took note of the original decision in the *Universal Lamp Co.* case (53 Treas. Dec. 356, T. D. 42686) and modified the provision for "flint, flints, and flint stones, unground" in paragraph 1577 of the Tariff Act of 1922 so that in the Tariff Act of 1930 (paragraph 1679) this provision reads *"Natural* flint, *natural* flints, and *natural* flint stones, unground." [Italics ours.] It is true that the issue therein was not, as here, between ferrocerium and parts of cigar lighters, but the court there did decide that these flints were dutiable as ferrocerium (paragraph 302 of the Tariff Act of 1922). The doctrine of legislative sanction of judicial interpretation may be invoked even when the later case embodies a claim not in the earlier case (*Latimer* v. *United States*, 223 U. S. 501).

We are not unmindful of the difference in diameter of the flints in the two cases but both were susceptible of use in cigar lighters. Had the Congress any intention of making a distinction in the dutiable rate of any particular size of ferrocerium, it could readily have indicated such intent. Ferrocerium is imported only in the form here before the court and, so far as this record discloses, in only two sizes, 2.6 mm. and 3.0 mm. in diameter, both broken into irregular pieces about 5.0 mm. in length.

The record does not disclose how many of these flints were contained

in each of the one hundred 1-kilo cans of the 2.6 by 5.0 mm. size in this shipment. Apparently one can was opened and the contents counted because duty was assessed at 1 cent each and 50 per centum ad valorem on 4,496 individual flints in every one of the 100 cans. As to the number of flints counted in the opened can, the finding of the collector may be presumed to be correct. As to the unit contents of the other 99 cans, there can be no presumption of correctness of the number contained therein as the number must, of necessity, have been estimated. Exhibit 1 does not support the statement in brief filed by the Government that "the flints in the case at bar were imported in wholesale packages consisting of 1-kilo cans containing 4,496 flints each." Human experience and common sense would indicate that the chance of any two of these cans containing exactly the same number of flints would be so rare as to border on the impossible. These flints were not even cut to exact size; they were broken into pieces approximately 5.0 mm. in length. We caused exhibit 1 herein, which was a sealed 1-kilo can of the 2.6 by 5.0 mm. flints taken from this shipment, to be opened in the presence of importer's counsel and counsel for the Government and its contents examined and counted by a deputy clerk of this court. At the request of Government counsel, six of these flints were selected at random by a Government official from the appraiser's office and were measured in the presence of counsel. They were found to measure 2.47 to 2.48 mm. in diameter and to range in length from 4.88 to 5.14 mm. The can was found to contain a total of 5,895 flints, 11 broken pieces, and about a teaspoonful of dark-gray powder.

It will be noted that the diameter of those flints that were measured, although invoiced and described as 2.6 mm. in diameter, actually measured less than 2.6 mm. This may account in part for the tremendous difference between the 4,496 flints used as a basis for assessing duty and the 5,895 flints found in exhibit 1. On the basis of duty as assessed under paragraph 1527 (c) (2) a 1-kilo can (of 4,496 flints), valued at $4.24 per kilo, would be subject to a duty of $47.08, whereas the 3.0 by 5.0 size on the same invoice, also valued at $4.24 per kilo, would be subject to a duty of only $5.46 per kilo.

The result thus flowing from the action of the collector is so inconsistent with what would seem to be the clear intent of Congress that it ordinarily would call for equitable relief. We have no equitable powers and may not grant what we might consider to be substantial justice unless we are supported in such action by the statutes, the decisions of our courts, or by what would seem to be the intent of Congress. In the present case we are of opinion that Congress by providing for a duty per pound on these flints clearly expressed its intention that weight, and not a unit count, was to be the proper basis for assessement of duty on ferrocerium (flints). We are also of

opinion that by providing for ferrocerium in paragraph 302 (q) by name without qualification as to size, that it intended to cover all sizes. We are of the further opinion that the assessment of different rates of duty on two sizes of ferrocerium flints was not intended by the Congress and may not be read into the otherwise unambiguous provision for ferrocerium in paragraph 302 (q).

In view of our decision herein, we deem it unnecessary to pass on plaintiff's claim that the collector's change of rate was illegal as no notice of such change was given. The same applies to plaintiff's claim under paragraph 1527 (d) and its claim to duty at the rate of 110 per centum ad valorem under paragraph 1527 (c) (2).

For the reasons set forth herein we find the action of the collector was erroneous and that the merchandise is properly dutiable under the eo nomine provision therefor in paragraph 302 (q) of the Tariff Act of 1930 as ferrocerium at $2 per pound and 25 per centum ad valorem.

The protest is sustained to the extent indicated; in all other respects and as to all other merchandise it is overruled.

Judgment will be rendered accordingly.