**No. 59234.**—Delaware Paper Mills, Inc. *v.* United States, protest 196769–K (New York).

MOLLISON, Judge:  This protest has been limited to the merchandise described on the invoice accompanying entry 700810 as "Tops—T. V. Wood Cabinet Parts, Model #11447, Blueprint #R149663, Part #1," and to the merchandise described on the invoice accompanying entry 701195 as "Sides—T. V. Wood Cabinet Parts, Model #11447, Blueprint #R149663, Part #2."  Duty was assessed upon said merchandise at the rate of 40 per centum ad valorem under the provision in paragraph 405 of the Tariff Act of 1930 for plywood, and the protest claim is for duty at the rate of 20 per centum ad valorem under the provision in paragraph 412 of the said act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for parts of furniture, wholly or in chief value of wood, and not specially provided for.

It was stipulated that the merchandise invoiced as tops measured 23″ x 29″ x ¼″, and that the merchandise invoiced as sides measured 20¼″ x 31¾″ x ¼″, and that such merchandise was 5-ply construction throughout, with no holes.  An official sample of the merchandise invoiced as "sides" is before us as plaintiff's exhibit 1 and is stipulated to be representative of the merchandise invoiced as "tops," except insofar as dimensions are concerned.

To the lay eye, plaintiff's exhibit 1 appears to be a rectangular piece of plywood of a very fine grade.  There is testimony to the effect that it was manufactured in accordance with very rigid specifications as to the nature and quality of wood, glue, and workmanship, and that, as imported, the individual pieces were serially numbered or kept in sets to be later joined together in the manufacture of cabinets for television sets.

As imported, the surfaces and edges are rough sanded.  The evidence as to manufacture and use after importation is very detailed and is convincing that, as imported, the merchandise was intended to be used with very little, if any, change in dimension as parts for television cabinets.  It is, however, clear that, after imported pieces were joined to other pieces to form a television cabinet, a considerable amount of work remained to be done in the matter of putting a finish on the wood.

We think there can be no doubt but that, so far as the personal and private intentions of the importers and ultimate consignees of the instant merchandise are concerned, the pieces of plywood at bar were, from the very beginning of their manufacture abroad, specially selected and manufactured with the intention of using them in this country as parts of television cabinets.  This, however, is what might be called a subjective dedication of the merchandise to the manufacture of television cabinets.  For the purpose of classification and assessment of duty under the provisions of the tariff act, however, a more objective standard is required.

We are satisfied that as it appears before us, and without considering the personal and private intentions of the importers and ultimate consignees in the matter, the merchandise is no more than pieces of plywood material.  What dedication they may have to the making of television cabinets existed in the minds and intentions of the importers and ultimate consignees, but in an objective sense they are merely plywood cut into rectangular pieces which bear no physical evidence

of dedication to any specific use or class of uses, but which, on the contrary, are shown to be usable for any purpose their size permits for which one would use plywood material. The shape is the common rectangular form of plywood material, and the edges are squared as such material is commonly squared. We find an absence of such physical dedication to use as parts of furniture as would take the pieces out of the provision for the material, plywood, and put them in the class of parts of furniture.

The situation is very like that which obtained in the case of *John A. Hunter Hardwood Corp.* v. *United States*, 21 Cust. Ct. 139, C. D. 1143, wherein certain pieces of lemonwood, sawed and squared to common dimensions which made them particularly suitable and desirable for use in making archery bows, but which were not physically dedicated to such use or to the making of any other article or class of articles, were held to be dutiable as the material, lumber, rather than as blocks or sticks dedicated to the making of archery bows.

Similarly, in *Central Vermont Railway, Inc.* v. *United States*, 31 Cust. Ct. 160, C. D. 1563, pieces of wood, sawed to specific dimensions which made them particularly suitable for further manufacture into certain boxes, were held, because of an absence of physical dedication to such use, to be no more than the material, lumber, rather than box shooks.

For the reasons stated, the protest claim is overruled, and judgment will issue accordingly.