(C. D. 1769)

GENERAL SHIPPING & TRADING Co.} *v.* UNITED STATES
FELIX LORENZONI

United States Customs Court, First Division

(Decided March 16, 1956)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiffs.
*Warren E. Burger,* Assistant Attorney General (*Joseph E. Weil* and *William J. Vitale,* trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges; OLIVER, C. J., dissenting

MOLLISON, Judge: The issue in this case is whether certain pieces of marble, imported to be used in the decoration of a church, were, in their imported condition, merely material, namely, slabs of marble to be made into a wainscot, or whether they were collectively a manufactured article, to wit, a wainscot, in knocked-down condition.

The collector of customs took duty on the pieces of marble at the rate of 25 per centum ad valorem under the provision in paragraph 232 (d) of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for—

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for * * *.

The protest claim relied upon is that for duty at the rate of 7 cents per superficial foot under the provision in paragraph 232 (b) of the

said act, as modified by the Presidential proclamation carrying out the Annecy Protocol of Terms of Accession to the General Agreement on Tariffs and Trade, T. D. 52476, for—

Slabs and paving tiles of marble, breccia, or onyx: Containing not less than four superficial inches:

\* \* \* \* \* \* \*

If polished in whole or in part (whether or not rubbed):
If not more than one inch in thickness \* \* \*.

The decisive element in the present issue is the matter of whether or not in their imported condition the pieces of marble were reasonably fitted only for assembly into a wainscot, with their utility for other purposes impaired or destroyed, or were fairly adaptable to other general uses.

In *United States* v. *Dudley*, 174 U. S. 670, the competition was between a provision for dressed lumber and a provision for manufactures of wood. In determining that certain boards and planks, which had been sawed, planed, and then prepared for use by a flooring machine which matched two edges, i. e., tongued and grooved them, were still dressed lumber, rather than manufactures of wood, the Supreme Court said:

\* \* \* Where a manufactured article, such as sawed lumber, is usable for a dozen different purposes, it does not ordinarily become a new manufacture until reduced to a condition where it is used for one thing only. So long as "dressed lumber" is in a condition for use for house and ship building purposes generally, it is still "dressed lumber;" but if its manufacture has so far advanced that it can only be used for a definite purpose, as sashes, blinds, mouldings, spars, boxes, furniture, etc., it becomes a "manufacture of wood." \* \* \*

This principle, indicating generally and in the absence of contrary legislative intent the distinction between a material for manufacturing and a manufactured article, has found wide application in tariff jurisprudence. See *Athenia Steel & Wire Co.* v. *United States*, 1 Ct. Cust. Appls. 494, T. D. 31528; *Snow's United States Sample Express Co.* v. *United States*, 8 id. 17, T. D. 37161; *Thompson-Starrett Co.* v. *United States*, 12 id. 37, T. D. 39979; *United States* v. *State Forwarding & Shipping Co.*, 14 id. 153, T. D. 41690; *United States* v. *M. H. Rogers, Inc.*, 18 C. C. P. A. (Customs) 271, T. D. 44448; and *United States* v. *Strauss & Buegeleisen*, 20 id. 378, T. D. 46184.

The requirement of dedication to a use or a class of uses applies as well in the case of unfinished or partly manufactured articles, as in the case of finished or wholly manufactured articles. *Redden & Martin* v. *United States*, 5 Ct. Cust. Appls. 485, T. D. 35147, and *Henry Pollak, Inc.* v. *United States*, 22 C. C. P. A. (Customs) 81, T. D. 47066.

With the foregoing in mind, we proceed to inquire whether the record contains such facts with respect to the nature of the imported merchandise as would enable us to determine its status.

The record shows that the importation consists of 315 pieces of marble, seven-eighths of an inch thick, of a uniform width of 1½ feet, but of varying lengths. One face of each piece was highly polished, and there were holes drilled into one edge to be used with anchors, or clamps, or fastening devices to hold the pieces to a wall. As imported, each piece was numbered, but this was said to be only for the purpose of "follow [ing] up the vein of the marble," so that it would match and produce a "pleasing looking job."

It was brought out at the trial that the marble in issue was ordered in accordance with blueprint specifications. The blueprint was not offered in evidence, but the record indicates that it did not specify individual dimensions for each piece but called for so many slabs of one size and so many of another, and so on.

It appears that the marble was ordered after exact measurement of the location in the building it was to occupy and that an excess approximating 10 per centum was ordered, because of the fact that certain slabs had to be cut and fitted on the job, inasmuch as the floor was not precisely level and inasmuch as the distance between joints was not uniform, requiring a cutting and fitting at corners. The excess that remained was left at the church to be used for repairs in case of later damage.

A consideration of the entire record persuades us that such dedication as might be said to apply to the marble at bar was subjective only, existed only in the mind and intent of the parties to the transaction. We are of the opinion that in the application of tariff classifications to imported merchandise a more objective standard must be used—one which regards the physical nature of the importation as the criterion. Physically, the marble at bar was no more than slabs, usable and adaptable for the purposes to which slabs of the dimensions of those imported could generally be put.

Only two physical characteristics may be cited as connecting the slabs at bar to the wainscot to be installed in the church. One is the numbering of the pieces to secure the most pleasing matching of the veining of the marble, and the other is the presence of the anchor holes in one edge of the slabs. While the numbering and matching of the pieces may have conferred upon the slabs some advantage in the erection of the wainscot, it certainly in no way impaired or destroyed the use or adaptability of the slabs for other purposes. It was, therefore, not such an advancement as would transform the slabs from mere marble material into marble, wholly or partly manufactured into an article, viz, a wainscot.

There was testimony to the effect that the anchor holes in one edge of the imported slabs had little or no use in the erection of the wainscot, inasmuch as they were not deep enough nor adjusted to

the actual conditions on the wall, and, moreover, other holes in the opposite edge had to be drilled. It would appear, too, that whether or not the holes drilled into the edges prior to importation were of use in the erection of the wainscot, they did not impair the use or adaptability of the slabs for other purposes.

We are, therefore, constrained to hold that the pieces of marble at bar were not in their imported condition advanced beyond the state of being slabs and were, consequently, properly classifiable under the provision in paragraph 232 (b), as modified, as claimed.

As to the 315 slabs of marble referred to, the protest claim is sustained, but in all other respects and as to all other merchandise the protest, having been abandoned, is overruled. Judgment will issue accordingly.

### DISSENTING OPINION

OLIVER, Chief Judge: I am constrained to dissent from the position taken herein by my colleagues.

I do not accept the theory of classifying this merchandise which the majority opinion develops according to an "objective" standard of use, as opposed to a "subjective" dedication to use. The reasoning is novel, and I find no rule of construction in support thereof. The fundamental tariff principle, applicable herein, is that the classification of imported merchandise is controlled by its condition at the time of importation. *United States* v. *Citroen*, 223 U. S. 407; *Dwight* v. *Merritt*, 140 U. S. 213.

The record herein is conclusive to the effect that the marble in question was ordered according to specifications, in certain predetermined sizes, for a definite use as wainscoting in a particular building; that, at the time of importation, each piece had anchor holes drilled at the top and was appropriately numbered, identifying it for installation as wainscoting in such a manner that the "veining of the marble" would match; and that all of the merchandise was actually used, according to the specifications therefor, for the particular purpose for which it was ordered. That this merchandise might be, or could be, used for some other purpose is mere conjecture, and, therefore, wholly immaterial toward a proper disposition of the issue herein. A possible use of this merchandise has no bearing on its tariff classification.

Plaintiffs' uncontradicted testimony establishes that the merchandise, as imported, was more than slabs, and that it was, in fact, marble wainscoting, advanced to such condition as to bring it within the provisions of paragraph 232 (d) of the Tariff Act of 1930, as modified by T. D. 51802, as classified by the collector.

The protest should be overruled and the decision of the collector affirmed.