**No. 60927.**—Geo. S. Bush & Co., Inc., et al. *v.* United States, protests 257815–K, etc. (Seattle).

MOLLISON, Judge: The merchandise the subject of these protests, which were consolidated for trial and disposition, was assessed with duty by the collector of customs at the rate of 20 per centum ad valorem under the provision in paragraph 405 of the Tariff Act of 1930, as modified by the Presidential proclamation relating to the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, for "Plywood * * *: Other [than certain named types of which the present importations are not one]."

The merchandise, in fact, consists of one-eighth inch thick 3-ply lauan plywood, cut to or originally made in specific dimensions which make them particularly useful and suitable in the manufacture of flush doors, as faces for such doors. The evidence is to the effect that they were ordered specifically for that purpose. However, save for being in rectangular pieces in specific sizes running from 18½ inches through 36½ inches wide by 81½ through 85½ inches long, the articles bear no physical evidence of any sort of dedication for any use other than general plywood uses.

The plaintiff claims, however, that by reason of the fact that the imported merchandise is in the specific sizes mentioned and is known in the trade dealing in doors as "doorskins," it is removed from the provision for plywood as a material and is properly dutiable at the rate of 16½ per centum ad valorem under the provision in paragraph 412 of the tariff act, as modified by the Presidential proclamation relating to the General Agreement on Tariffs and Trade, T. D. 51802, for manufactures of wood, not specially provided for.

The issue posed—whether the imported merchandise is classifiable as a material or as a manufacture of a material—is a familiar one, and, throughout the years, the rules for its determination have been laid down with great precision. One of such rules is that, to constitute a manufacture of a material, as distinguished from the material itself, there must be a dedication to a single use or class of uses, *and an impairment or destruction of utility for other purposes.* *General Shipping & Trading Co.* and *Felix Lorenzoni* v. *United States*, 36 Cust. Ct. 158, C. D. 1769, affirmed in *United States* v. *General Shipping & Trading Co.* and *Felix Lorenzoni*, 44 C. C. P. A. (Customs) 168, C. A. D. 656, decided May 7, 1957.

To be sure, by reason of the precise dimensions in which the plywood at bar was imported, it was particularly adapted for economical use in the making of flush-type doors. Such doors are made in stock sizes, being the same sizes in which the merchandise at bar was imported, so that, when fitted to a doorway, there is a minimum of cutting of the completed door.

The evidence shows, however, that while plywood as a material is generally offered in sheets of standard sizes, and the imported sheets are not in such standard sizes, it is also cut or made to dimension, if ordered that way. The articles at bar are plywood sheets in rectangular shape, useful for any purpose for which their size would permit. The record shows that such plywood is at times used for purposes other than for doors and that such use is not accidental, fugitive, or destructive, as suggested by counsel for the plaintiffs in the brief filed in their behalf.

The situation is on all fours with that which obtained in the case of *Delaware Paper Mills, Inc.* v. *United States*, 35 Cust. Ct. 221, Abstract 59234. There, pieces of plywood, in rectangular form, and in the exact dimensions required for use as tops and sides for television cabinets, were imported. The merchandise was assessed under the provision for plywood and was claimed to be dutiable under the tariff provision for parts of furniture, wholly or in chief value of wood.

We there said:

We are satisfied that as it appears before us, and without considering the personal and private intentions of the importers and ultimate consignees in the matter, the merchandise is no more than pieces of plywood material. What dedication they may have to the making of television cabinets existed in the minds and intentions of the importers and ultimate consignees, but in an objective sense they are merely plywood cut into rectangular pieces which bear no physical evidence of dedication to any specific use or class of uses, but which, on the contrary, are shown to be usable for any purpose their size permits for which one would use plywood material. The shape is the common rectangular form of plywood material, and the edges are squared as such material is commonly squared. We find an absence of such physical dedication to use as parts of furniture as would take the pieces out of the provision for the material, plywood, and put them in the class of parts of furniture.

We there cited the case of *John A. Hunter Hardwood Corp.* v. *United States*, 21 Cust. Ct. 139, C. D. 1143, relating to pieces of lemonwood, sawed and squared to common dimensions which made them particularly suitable and desirable for use in making archery bows, but which were not otherwise physically dedicated to such use, and in which a similar result was reached.

In the *General Shipping & Trading Co. et al.* case, cited above, certain pieces of marble, although cut abroad for use in a church wainscot, were held, nevertheless, to be nothing more than marble slabs and dutiable as such, rather than as manufactures of marble. An observation made by the majority of our appellate court there seems to have particular applicability here. The majority said:

The fact that marble slabs are not ordered from stock but are cut to specification might be important if their shape were of such nature as to render them useless for any purpose other than the specific one for which they were cut. But where, as here, the pieces are cut to rectangular form and the evidence shows that they have general utility, they cannot properly be considered to be marble wholly or partly manufactured into an article.

Thus, had the pieces at bar been curved or rounded off in such a way as to dedicate them to a single ultimate use or class of uses, or some other act been performed on them which would have impaired or destroyed their use for general plywood purposes, the result might have been different. As it is, we have nothing before us but plywood in sheets, rectangular in form, which is a common commercial form, adaptable for any purposes for which plywood within the limits of their size may be used. We do not consider that there has been sufficient dedication to the manufacture of any one thing, such as doors, and impairment for any other use, as would take them out of the class of the material, plywood.

Judgment will, therefore, issue overruling the protests.