BEFORE THE FIRST DIVISION, OCTOBER 2, 1957

**No. 61228.**—J. B. Henriques, Inc. v. United States, protest 262782–K (New York).

OLIVER, Chief Judge: This protest relates to certain so-called "Perspex" acrylic resin sheets, imported in three different sizes, i. e., 24⅞″ x 14⅛″ x ⅛″; 12¼″ x 11⁵⁄₁₆″ x ⅛″; and 12¼″ x 2⅛″ x ⅜″. The collector classified the merchandise, by similitude, as cellulose acetate in sheet form, not made into finished or partly finished articles, and assessed duty at the rate of 25 cents per pound under paragraph 31 (a) (1) and (2) of the Tariff Act of 1930, as modified by T. D. 51802, and paragraph 1559 of the Tariff Act of 1930. Plaintiff does not dispute the classification as cellulose acetate, by similitude, but claims that these sheets are partly finished articles and, therefore, are properly dutiable under paragraph 31 (a) (1) and (2), as modified, *supra*, and paragraph 1559, *supra*, at only 20 per centum ad valorem. The competing provisions appear in paragraph 31 (a) (1) and (2), as modified, *supra*, as follows:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 31 (a) (1) and (2) | Cellulose acetate, and compounds, combinations, or mixtures containing cellulose acetate: In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, whether of [sic] not colloided, and waste wholly or in chief value of cellulose acetate, all the foregoing not made into finished or partly finished articles_____ | 25¢ per lb. |
| | Made into finished or partly finished articles of which any of the foregoing is the component material of chief value, and not specially provided for_____ | 20% ad val. |

By virtue of plaintiff's acceptance of the collector's classification as cellulose acetate, by similitude, the sole issue before us is whether the merchandise in question is sheets, as classified, or made into partly finished articles, as claimed.

The president of the plaintiff corporation was the only witness. His testimony supports the following summation. Plaintiff, a distributor of chemicals and plastics, is the representative in this country of the Imperial Chemical Industries, Ltd., of England, the manufacturer of these acrylic resin sheets, bearing the trade name "Perspex." The shipment in question is a partial delivery under a purchase order (plaintiff's exhibit 1) received by plaintiff from one of its customers, Thermacote Co. of Newark, N. J. When, in 1950, Thermacote Co. began using acrylic resin sheets, it imported sheets of a standard size, i. e., 36″ x 48″. Such sheets were used for producing "a variety of articles," the principal use being for the manufacture of a lid, called the "C-Thru lid," designed for an ice-cream dispenser. Later, and during the latter part of 1951 or early in 1952, the Thermacote Co. changed its practice of importing standard size sheets and began importing these "Perspex" sheets, cut to specific sizes, suitable for use in the manufacture of lids for ice-cream dispensers. Having the English manufacturer pre-cut the sheets to certain sizes, as required, involved "a surcharge of 8 per cent for cutting," but decreased factory labor and material costs in this country. Thus, from an economic viewpoint, the use of specific sizes, as ordered, was more advantageous to Thermacote Co.

In their imported condition, the sheets under consideration were flat and rectangular. After importation, Thermacote Co. processed or manipulated each of the sizes to make them available for the particular purpose that each served in the manufacture of the so-called "C-Thru lid" for ice-cream dispensers (plaintiff's exhibit 4). The sheets, 24⅞″ x 14⅛″ x 1¼″, were used in making the shell, or "dished part" of the ice-cream dispenser. To make them serviceable for that purpose, each sheet was heated to a certain temperature, imparting to it the consistency of rubber, in which condition it was put into a mold and stamped out in curvature, giving the "dish shape." The backs of the so-called "C-Thru" lids are made from sheets 12¼″ x 2⅛″ x ⅜″ that are fitted with hinges and then cemented to the shell. The tops of those lids are made from sheets 12¼″ x 11⅝₁₆″ x 0.125 inch, which are fitted with red handles and cemented to the shell. After cementing, there is a finishing operation that consists of "curving the corners to conform to the shell and to give it a nice appearance." Although

Thermacote Co. used the imported sheets under consideration in the manufacture of lids for ice-cream dispensers, these specific sizes could be used in making "novelties," for example, "a sign for your desk or a door push plate, or something like that could be made if you cut it down."

To support plaintiff's contention, counsel, in his brief, discusses at length the cases of *United States* v. *Geo. S. Bush & Co., Inc.*, 16 Ct. Cust. Appls. 478, T. D. 43222, and *United States* v. *American Hecolite Denture Corp.*, 21 C. C. P. A. (Customs) 131, T. D. 46465. Both cases arose under the Tariff Act of 1922 and involved paragraph 31 thereof, reading as follows:

Compounds of pyroxylin, of other cellulose esters or ethers, or of cellulose, by whatever name known (except compounds of cellulose known as vulcanized or hard fiber), in blocks, sheets, rods, tubes, or other forms, and not made into finished or partly finished articles, 40 cents per pound; made into finished or partly finished articles, of which any of the foregoing is the component material of chief value, 60 per centum: *Provided,* That all such articles (except photographic and moving-picture films), whether or not more specifically provided for elsewhere, shall be dutiable under this paragraph.

Each of the above-mentioned cases involved identical articles, consisting of hecolith base plates, U-shaped, or horseshoe-shaped, in varying sizes and shapes, chiefly used by dentists to make plates for artificial teeth. The merchandise was classified as compounds of pyroxylin, made into finished or partly finished articles, and was claimed to be properly classifiable as compounds of pyroxylin in blocks, sheets, rods, tubes, or other forms, not made into finished or partly finished articles. In other words, the statutory provisions in issue in both of the cited cases were substantially the same as those involved in this case. The cited cases, however, are distinguishable from the present case for reasons, as developed, *infra.*

In the *Geo. S. Bush & Co., Inc.*, and the *American Hecolite Denture Corp.* cases, *supra,* it was established of record that the articles there under consideration were made prior to their importation by the use of a material of German origin, called hecolith, which was usually first processed into blocks or sheets. A portion of the hecolith was placed in a mold and compressed under heat until it assumed the form of the imported article, usually following the curvature of the gums in the human mouth. The sides of the plates into which the teeth were to be pressed were concave, and the other sides were more or less convex or raised. After importation, the hecolith plates were subjected to processing, stabilizing the articles from shrinkage and warpage, and making them fit for use as dentures. There was also a showing of a minor use for the imported merchandise in making artificial eye bases and surgical pessaries. In sustaining the collector's classification and holding the merchandise to be partly finished articles within the purview of paragraph 31, *supra,* the appellate court emphasized, in each of the cited cases, that processing the imported articles to their horseshoe effect or shape fitted them for their ultimate use, and that the construction of the hecolith plates to their imported shapes and sizes did not result in any of the kinds of "forms" contemplated by the statute. In the case now before us, the merchandise under consideration, in its condition as imported, consisted of sheets. It is true, as plaintiff's testimony shows, that these sheets were of odd sizes, having been cut from larger sheets, cast in a standard size; but, it was not until after importation, when this merchandise was processed and manipulated by Thermacote Co., that it became something more than mere sheets of acrylic resin and acquired the identity of the shells, the backs, and the sides of lids for ice-cream dispensers. The vital distinction between the class or kind of merchandise that was involved in the *Geo. S. Bush & Co., Inc.*, and the *American Hecolite Denture Corp.* cases, *supra,* and the commodity that is before us in this case, renders the two cited cases distinguishable from the present one. There, the hecolith base plates under consideration had been processed by the foreign manufacturer, prior to their

importation, to a definite and distinct shape that was not any of the kinds of "forms" to which paragraph 31 of the Tariff Act of 1922 related. The acrylic resin sheets before us in this case were, in their condition as imported, merely sheets, one of the forms specifically mentioned in paragraph 31 (a) (1) and (2) as amended, *supra*. Nothing had been done to these imported sheets to impair or to destroy the general use of them as sheets. Although they were ultimately used in the manufacture of lids for ice-cream dispensers, plaintiff's witness admitted that "novelties could be made from these, a sign for your desk or a door push plate, or something like that could be made if you cut it down."

That plaintiff ordered these sheets in the specific sizes, as imported, pursuant to instructions from one of its customers, Thermacote Co., is not a controlling consideration. The case of *General Shipping & Trading Co.* and *Felix Lorenzoni* v. *United States*, 36 Cust. Ct. 158, C. D. 1769, affirmed in *United States* v. *General Shipping & Trading Co.*, and *Felix Lorenzoni*, 44 C. C. P. A. (Customs) 168, C. A. D. 656, is in point. There, the merchandise consisted of pieces of marble that were ordered according to specifications, in certain predetermined sizes for specific use as wainscotting in a particular building, and actually so used. In holding the merchandise to be properly classifiable as slabs of marble, the majority opinion of our appellate court stated:

The fact that marble slabs are not ordered from stock but are cut to specification might be important if their shape were of such a nature as to render them useless for any purpose other than the specific one for which they were cut. But where, as here, the pieces are cut to rectangular form and the evidence shows that they have general utility, they cannot properly be considered to be marble wholly or partly manufactured into an article. The fact that the dealer from whom the slabs are purchased does not carry in stock rectangular pieces of the particular dimensions desired should not be controlling on the question of classification.

The *General Shipping & Trading Co. et al.* case, *supra*, with the foregoing quotation therefrom, was cited in our recent decision in *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 39 Cust. Ct. 322, Abstract 60927, which involved certain plywood, cut to or originally made in specific dimensions that made them particularly adaptable and economically useful in the manufacture of flush doors, as faces for such doors. In concluding that the plywood was properly classifiable as plywood, as a material, as assessed by the collector, rather than as manufactures of wood, as claimed by plaintiffs, we said that—

* * * had the pieces at bar been curved or rounded off in such a way as to dedicate them to a single ultimate use or class of uses, or some other act been performed on them which would have impaired or destroyed their use for general plywood purposes, the result might have been different. As it is, we have nothing before us but plywood in sheets, rectangular in form, which is a common commercial form, adaptable for any purposes for which plywood within the limits of their size may be used. We do not consider that there has been sufficient dedication to the manufacture of any one thing, such as doors, and impairment for any other use, as would take them out of the class of the material, plywood.

The merchandise involved herein consists of acrylic resin sheets, flat and rectangular, and adaptable for any purpose for which such sheets within the limits of their sizes may be used. These sheets, like the marble slabs involved in the *General Shipping & Trading Co. et al.* case, *supra*, and the plywood involved in the *Geo. S. Bush Co., Inc., et al.* (Abstract 60927) case, *supra*, are pieces cut to rectangular form and not sufficiently dedicated to the manufacture of any one thing and impairment for any other use. Hence, these sheets cannot be considered to be partly manufactured articles.

On the basis of the present record and for all of the reasons hereinabove set forth, we hold the acrylic resin sheets in question to be properly classifiable, by similitude, as cellulose acetate in sheet form, not made into finished or partly finished articles, and dutiable at the rate of 25 cents per pound under paragraph

31 (a) (1) and (2) of the Tariff Act of 1930, as modified, *supra*, and paragraph 1559, *supra*, as assessed by the collector.

The protest is overruled and judgment will be rendered accordingly.