(C. D. 2019)

B. A. McKENZIE & Co., INC.
W. J. BYRNES AND COMPANY, $\Big\}$ *v.* UNITED STATES
A/C M. S. COWEN Co.

United States Customs Court, First Division

(Decided August 5, 1958)

Lawrence & Tuttle (Barnes, Richardson & Colburn by Edward N. Glad and Joseph Schwartz of counsel) for the plaintiffs.
George Cochran Doub, Assistant Attorney General (Richard E. FitzGibbon, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The two protests above enumerated were consolidated for trial. The record made on the trial is essentially a retrial of the issues decided by this division of the court in the case of Geo. S. Bush & Co., Inc., et al. v. United States, 39 Cust. Ct. 322, Abstract 60927, and the record in that case was incorporated as part of the record herein.

According to the evidence given by plaintiffs' witness, the merchandise consists of what are known to the door manufacturing trade, including those who sell to that trade, as "doorskins." They are used in the manufacture of what are known as "flush doors," i. e., doors with plain faces, uninterrupted by panels, stiles, rails, etc., commonly seen on many doors. The doorskins consist of nothing more than sheets of wood of plywood construction, having three plies, one-eighth of an inch in total thickness, and cut in rectangular shape in dimensions slightly greater than those of standard size doors. Thus, the lengths of the doorskins for use on a standard 6-foot 8-inch door might be 80½, 80¾, or 81 inches, while for a 7-foot door the length would be 85 inches. The widths of the doorskins are ½ to ¾ of an inch greater than the standard widths of the doors with which they may be used, which apparently increase by 2-inch increments, from 22 to 36 inches.

The doorskins were classified by the collector under the provision for "Plywood * * * : Other [than certain named types of plywoods not here involved]," and he assessed duty thereon at the rate of 20 per centum ad valorem under that provision in paragraph 405 of the Tariff Act of 1930, as modified by the Presidential proclamation, reported in T. D. 52739. The protest claim in each case is for duty at the rate of 16⅔ per centum ad valorem under the provision in paragraph 412 of the said act, as modified by the Presidential proclamation, reported in T. D. 52373, for "Manufactures of wood * * * or of which wood * * * is the component material of chief value, not specially provided for: * * * Other [than certain named manufactures of which doorskins is not one]."

On behalf of the plaintiffs, it is contended that the articles in issue are, in fact, designed, manufactured, and known as parts of doors, and are physically dedicated for use only as parts of doors. Consequently, it is argued, they have a name, character, and use different from the material, plywood, and are, in fact, manufactures of plywood, and, there being no more specific provision therefor, should take classification under the provision for manufactures of wood, not specially provided for.

On behalf of the defendant, it is contended that plywood is itself a manufacture of wood, and, being specially provided for, is not included in the provision for manufactures of wood, not specially provided for. Further, that the involved doorskins are merely a form of plywood, and not a manufacture of plywood, and, as such, take classification under the provision for plywood in paragraph 405, *supra*.

The record consists of the oral testimony, largely cumulative, of 11 witnesses called by the plaintiffs, one illustrative exhibit, and the record in the *Bush* case, *supra*. The latter consists of the oral testimony of two witnesses for the plaintiffs and four for the defendant, as well as one illustrative exhibit and two documentary exhibits offered in evidence by the plaintiffs in that case. In the incorporated record is a stipulation to the effect that the material of which the imported doorskins were made was plywood.

Despite the volume of evidence added by the oral testimony given at the trial of the present case, the evidentiary facts of the combined record are not materially different from those brought out in the trial of the *Bush* case, *supra*.

The involved doorskins were made of three plies of wood veneers, which, prior to importation, had been cut to size and glued together in the same manner as plywood is made. One face was required to be of lauan mahogany of the grade known as "good," while the back could be of a lower grade. Both sides or faces were required to be scraped, and the good face was sanded. While there is some evidence that the glue used was of a particular quality, it does not appear that any of the foregoing conditions as to grade of faces, scraping and sanding, or quality of glue used would, either singly or in combination, take such merchandise out of the category of what is commonly or commercially known as plywood.

Plaintiffs contend that the merchandise at bar has a new name (doorskins), character (thickness and size), and use (as flush door faces) which are different from the material, plywood. Under the well-known principle of customs law with respect to the distinction between a material and manufactures of that material, plaintiffs argue that the doorskins at bar are manufactures of wood, rather than the material, plywood.

With respect to the claim that the merchandise at bar bears a distinctive name different from that of plywood, it is noted that all of plaintiffs' witnesses who were engaged in the purchase, sale, and use of plywood as well as doorskins indicated a personal adherence to the distinction between the terms. Yet, in plaintiffs' exhibit 2 in the incorporated record, being a pamphlet issued by the United States Department of Commerce in 1955 and setting forth commercial standards adopted by the industry producing and dealing in hardwood veneered hollowcore flush doors, there is not one single reference to or use of the term "doorskins." On the contrary, on page 5 of the said exhibit, it is stated that:

*Face panels* shall be plywood of two or more plies * * *

and, on page 10, under the heading "Nomenclature and Definitions," the term "Plywood face" is defined as—

The plywood used for the face of the door.

Under these circumstances, we can hardly attach to the testimony of plaintiffs' witnesses with respect to the use of the term "doorskins" that degree of weight which would establish that such name was so distinct from that of the material, plywood, that the product known by that name would be for tariff purposes a manufacture of plywood rather than plywood itself.

With respect to thickness, it is apparent that the making of the doorskins in the first instance to the thickness of one-eighth of an inch did not make them any the less plywood. It is a happenstance that plywood of that thickness is particularly adaptable for and possibly almost exclusively used at the present time for the manufacture of flush doors. This is not to say that, *because* of its thickness, one-eighth of an inch plywood cannot be used for any other purpose for which plywood of that thickness is now or may in the future be adaptable. Its use for any other purpose has not been impaired or destroyed because of its thickness, and, indeed, in plaintiffs' exhibit 3 in the incorporated record, being a pamphlet issued by the United States Department of Commerce in 1949 containing commercial standards adopted by the trade for hardwood panels, on page 15, under the heading "Standard Sizes and Thicknesses," it is clearly stated that one-eighth of an inch is a standard thickness for finished hardwood plywood.

Moreover, plaintiffs' illustrative exhibit 1, in this case, was offered as illustrating the character and construction of doorskins, except for size, it being a section cut from a doorskin. Three of plaintiffs' witnesses, upon being shown illustrative exhibit 1, identified it as plywood, and it seems clear from the testimony that if plywood of that thickness were in any other size than doorskin size it would be considered by the witnesses to be plywood.

Consequently, it appears that the sole element of character difference between plywood and doorskins upon which plaintiffs may rely is that of size. Doorskins are made to sizes or dimensions of length and width which can be used in the manufacture of flush doors with the least trimming. These sizes do not correspond to the stock sizes in which plywood generally is manufactured.

However, there is nothing inherent in the common meaning of the term "plywood" which limits it to material in stock sizes, or in any particular sizes. One of the witnesses for the defendant in the *Bush* case, *supra*, the record in which was incorporated herein, testified that plywood can be and is made in an infinite variety of sizes. It would thus appear that plywood is made in both stock and other than stock sizes.

As a matter of fact, it appears that the doorskins at bar were not made from plywood in the sense of plywood existing first and then being cut into doorskin sizes. It appears that the veneers or plies of which the doorskins were made were cut from the logs in the first instance in lengths and widths suitable for doorskins, so that the process of making the veneers into plywood and of making doorskins was a simultaneous process.

The term "plywood" itself is a noun, the name of a wood product made in a certain way, and is defined in Webster's New International Dictionary, second edition, 1945, as:

Wood made up of an odd number of veneer sheets glued together, the grains of the layers being (usually) at right angles to one another.

That definition certainly encompasses the merchandise at bar.

Plaintiffs, through their counsel, specifically disclaimed any intention of proving "a commercial designation," presumably meaning thereby a disclaimer of any intention of attempting to establish under the rule of commercial designation that the commercial meaning of the tariff term "plywood" was different from its common meaning, and that such commercial meaning excluded doorskins from the scope of the term. So far as appears from the dictionary definition quoted above, the common meaning does not exclude doorskins. Neither does the testimony of plaintiffs' witnesses, insofar as that testimony was directed toward establishing how the merchandise at bar was known in the trade and commerce of the United States dealing in such merchandise. Such testimony, in view of the disclaimer of intent to establish the meaning of the term "plywood" under the rule of commercial designation, was offered as an aid to the court in the determination of the common meaning of the tariff term "plywood," and all that was established thereby was that there is *a form of plywood, or a range of sizes of plywood* which is sometimes, although not, it appears, exclusively, known in such trade and commerce as "doorskins."

Such fact would not necessarily take the merchandise out of the tariff classification of "plywood." The tariff classification of "lumber" includes wood known as "flooring," "ceiling," and "sheathing." *United States* v. *Frank Dudley*, 174 U. S. 670. Such articles are forms of lumber, even though made for specific uses. Similarly, the fact that there is a form of plywood known to some extent as doorskins would not establish that the merchandise was not plywood for tariff purposes. In *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464, a majority of our appellate court said:

> The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of the said article.

Counsel for the plaintiffs has cited in the brief filed in their behalf many cases for the proposition that cutting to size may constitute such a physical dedication of a material that it becomes for tariff purposes a manufacture of that material. We are of the opinion that no uniform rule, applicable in all cases, can be derived from the result of such cases. In many of the cited cases, the tariff provisions involved were not comparable to those here involved and, in many of the cited cases, the result depended upon the precise wording of the statute, while, in some others, operations in addition to cutting to size had been performed on the imported merchandise.

Moreover, as pointed out by counsel for the defendant, in the brief filed in its behalf, there are a number of other cases in which it was held that mere cutting to size did not take merchandise otherwise classifiable as a material out of the category and confer upon it the status of a manufacture of that material.

The cutting to size of the merchandise at bar resulted only in a rectangular sheet of plywood. The evidence indicates that plywood is produced and marketed in rectangular sheets or panels and that it can be had on order in any size sheet or panel desired. We are, therefore, of the opinion that the size of the doorskins at bar is not such an element of character as would distinguish them from plywood for tariff purposes.

This leaves for consideration only plaintiffs' contention that the doorskins at bar were dedicated to a use (as faces for flush doors) not possessed by plywood. From what has been already said, and with particular reference to the matter contained in plaintiffs' exhibit 2 in the incorporated record, we think it is apparent that use as faces for flush doors is definitely a *plywood* use. In view of the fact that plywood comes in a variety of thicknesses, forms, and sizes, it is conceivable that some combinations of thickness, form, and size may result in a plywood material which is practically or economically

adaptable for only one use. While it is true that in that sense such a material is dedicated to that one use, it is, however, a *material* with a single, rather than more than one, use, and is not a manufacture of that material.

We are of the opinion that the merchandise at bar has not, by reason of any operations of manufacture performed upon it, been made into anything other than plywood and that it is properly classifiable for duty purposes under the provision for plywood in paragraph 405, as modified, of the tariff act, as assessed by the collector. Plywood, itself, is a manufacture of wood, but is specially provided for apart from the general provision for manufactures of wood, not specially provided for.

Judgment will, therefore, issue overruling the claim in each protest accordingly.