B. A. McKENZIE & Co., INC., ET AL. *v.* UNITED STATES (No. 4977) [1]

---

United States Court of Customs and Patent Appeals, December 7, 1959

*Barnes, Richardson & Colburn, Edward N. Glad (Joseph Schwartz* of counsel) for appellants.

*George Cochran Doub,* Assistant Attorney General and *Richard E. FitzGibbon,* Chief, Customs Section, for the United States.

[Oral argument October 6, 1959, by Mr. Schwartz and Mr. FitzGibbon]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK [2]

SMITH, Judge, delivered the opinion of the court.

This appeal by the importers is from the judgment of the United States Customs Court, First Division, C.D. 2019, overruling their protests. The merchandise is eighth-inch thick three-ply, lauan plywood, which is imported in panels of rectangular shapes. The imported panels are manufactured and sold as face panels for use in the manufacture of flush doors, and are supplied in assorted widths and lengths which vary by 2 inch increments corresponding generally to the widths and lengths of doors of standard sizes. The panels have an allowance of approximately one-half inch in each of their width and length dimensions to permit finish trimming of the completed door. In this litigation, and to some extent in the trade, such plywood panels are called "doorskins."

The collector classified the merchandise as plywood under paragraph 405 of the Tariff Act of 1930 as modified by T.D. 52739. The importers filed protest claiming that the merchandise should have been classified under paragraph 412 of the said Act as manufactures of wood n.s.p.f.

Evidence introduced by the importers shows that the panels of plywood in their imported condition were designed, manufactured, sold and used as parts of flush doors. On this showing, appellants take the position that the panels cease to be classifiable as plywood under paragraph 405 since they are manufactures of wood, i.e., unfinished face panels for flush doors.

The Government asserts that the merchandise is properly classified under the *eo nomine* provision for plywood, paragraph 405. It argues that since the imported plywood panels have not been processed beyond the material stage, their subsequent use as door face panels does not justify their entry under paragraph 412 as manufactures of wood n.s.p.f.

---

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to the provisions of Title 28, United States Code, Section 294(d).

The competing Tariff Act provisions, as modified, are:

*Assessed:* Paragraph 405, Tariff Act of 1930, as modified by T.D. 52739:

Plywood * * * _____ 20% ad val.

*Claimed:* Paragraph 412, Tariff Act of 1930, as modified by T.D. 52373:

Manufactures of wood or bark, or of which wood or bark is the component material of chief value, not specially provided for: * * *_____ 16⅔% ad val.

The Government called no witnesses in the trial below, but incorporated the record of *Geo. S. Bush & Co., Inc., et al.* v. *United States*, 39 Cust. Ct. 322. That case involved the same merchandise and issues as the present case, and, as in the present case, the Customs Court in the *Bush* case decided in favor of the Government. The testimony taken in the trial of the present case is largely corroborative of the record in the *Bush* case. However, in the *Bush* case, the Government produced evidence that the so-called "doorskins" had commercial uses other than the manufacture of doors, viz, in the manufacture of gun racks, luggage, kitchen cabinets, and paneling for trailers and walls.

In support of their position appellants introduced evidence that the imported plywood panels were different in quality, finish, thickness and size from what is asserted to be the standard 4' x 8' panels of commercially available plywood. Appellants' evidence also established that the imported plywood panels are manufactured abroad to specifications as to quality, finish, thickness and size all of which are fixed by the importer. The imported panels are not cut from plywood panels of larger sizes, but are made directly as panels of the imported sizes by gluing together and curing in a press, three wood plies or veneers of the appropriate dimensions and thicknesses to produce finished panels of the specified dimensions. For this reason appellants urge that the manufacturing specifications for the imported panels are specifications for a "manufacture of wood" which the trade and appellants know as "doorskins."

The evidence also establishes that the imported "doorskins" are used extensively in the manufacture of flush panel doors, and are not carried as stock items by dealers, but are ordered and manufactured according to the specifications of the door manufacturers.

When weighed as a whole, we find this evidence establishes that the only physical characteristics which distinguish the imported plywood "doorskins" from other eighth-inch thick panels of plywood are their length and width dimensions.

The record establishes that the length and width dimensions of so-called "stock panels" of plywood vary at six-inch and one-foot increments over a greater range of sizes than do the imported "door-skin" panels. The standard sizes of "stock panels" of plywood are thus both smaller and larger than the sizes of the imported plywood panels used as "doorskins." The record also establishes that it is not uncommon for users of standard plywood to order it in panels of specified sizes different from the so-called "standard" 4′ x 8′ panels.

The evidence before us also establishes that no single size or sizes of plywood panels are required for the normal usages of plywood. The testimony also shows that plywood panels are usually cut to size by the user to suit his needs and that "doorskins" may as easily be cut up for general use as may any other panel of plywood.

This evidence does not establish that the dimensions of the imported plywood panels have made them an article which is distinct from plywood and which may no longer be used for a large portion of the potential uses of plywood. ▮ To classify an article as a manufacture or part of a manufacture, it must be shown that the raw material from which it was made has been processed to such a degree that it no longer can be used for a large portion of the original potential uses of the raw material. *United States* v. *Dudley*, 174 U.S. 670; *United States* v. *General Shipping & Trading Co., Felix Lorenzoni*, 44 CCPA 168, C.A.D. 656.

On the basis of the foregoing evidence, the Customs Court found that the imported "doorskins" were but rectangular shapes of plywood and were properly classified as "plywood," within the *eo nomine* designation of paragraph 405. We agree with that decision.

▮ Where a provision of the Tariff Act names an article without terms of limitation, as does the *eo nomine* provision for plywood in paragraph 405, all forms of the article are thereby included. *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, T.D. 38966.

"The principle is too well established for the citation of references that, in determining the classification of goods, ▮ an *eo nomine* designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific." *United States* v. *Astra Trading Corp.*, 44 CCPA 8, 11, C.A.D. 627.

There is no evidence before us of any legislative intent to exclude from the *eo nomine* provision for plywood in paragraph 405 plywood panels of the particular dimensions which adapt them for use as "doorskins." The Summary of Tariff Information, 1929, at page 960, cited in appellants' brief, states that "Plywood is used extensively in the manufacture of * * * doors * * *." This summary was prepared and paragraph 405 was enacted after the decision in *United States* v.

*Briggs Manufacturing Co.*, 14 Ct. Cust. Appls. 1, T.D. 41526, had held that panels of three-ply veneers were "plywood" and as such were manufactures of wood. We think this indicates that Congress was aware of the use of plywood panels in the manufacture of doors and of the classification of plywood as a manufacture of wood. If Congress had intended to exclude any plywood panels from the *eo nomine* provisions of paragraph 405, it had the opportunity to do so, and we believe would have done so by appropriate language which would leave no doubt of its intent.

While the record herein refers extensively to the imported panels by what appears to be a new name, "doorskins," this fact is not determinative of the question of classification. The term "doorskin" does not appear in any standard lexicon, nor does it appear in the pamphlet introduced in evidence by the importers as Exhibit 2, entitled "Commercial Standard C.S. 200–55" published by the United States Department of Commerce. In this pamphlet, such plywood panels are called "face panels," and "plywood faces." ▉ Though merchandise may be given a new name, this circumstance does not necessarily indicate a new manufacture. *United States* v. *Dudley*, supra.

▉ The term "doorskin" undoubtedly is used by the importer to describe an intended purpose for which the plywood panels are imported. However, neither such intent nor the actual uses of the panels as "doorskins" are alone determinative of the proper tariff classification. *United States* v. *General Shipping & Trading Co., Felix Lorenzoni*, supra.

Appellant argues that since prior decisions of this court have held changes in dimension to be sufficient processing to constitute a manufacture, this court ought to find that the specified dimensions of the "doorskins" make them manufactures of wood n.s.p.f. We reject this argument. Each case stands upon its own particular facts. *J. B. Henriques, Inc.* v. *United States*, 46 CCPA 54, C.A.D. 695. Since to be a manufacture, the material must be so processed as to exclude a large portion of its original uses, ▉ the determination of whether or not an article is a manufacture must depend upon the facts presented in each case to show the nature of the material involved and the degree of processing to which it was subjected prior to importation. The manufacture of plywood panels in specified sizes does not change the nature of the product. The resultant "manufacture" still is plywood as that term is used in paragraph 405 of the Tariff Act of 1930 as amended.

We therefore *affirm* the judgment of the Customs Court.