(C.D. 2379)

LODGE SPARK PLUG Co. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided December 19, 1962)

*Lawrence & Tuttle* (*Edward N. Glad* of council) for the plaintiff.
*Joseph D. Guilfoyle*, Acting Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

RAO, Judge: In the case of *Lodge Spark Plug Co., Inc.*, and *James Loudon et al.* v. *United States*, 44 Cust. Ct. 448, Abstract 64136, this court held that certain imported spark plugs, classified as parts of automobiles in paragraph 369(c) of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, or by the Sixth Protocol of Supplementary Concessions to said General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, were properly dutiable at the rate of 8¾ per centum ad valorem as parts of internal-combustion engines of the carburetor type, within the purview of either paragraph 353 or paragraph 372 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739. Since both of said paragraphs provide for internal-combus-

tion engines of the carburetor type, and parts thereof, no more selective classification of said merchandise was directed.

With one exception, reference to which will be made, *infra*, spark plugs, similar in all material respects, are again before this court for consideration. Two protests are involved, which have been consolidated for purposes of trial. As in the decided case, the subject spark plugs were classified within the parts provisions of paragraph 369(c) as modified, *supra*, certain varieties having been assessed with duty at the rate of 15 per centum ad valorem, as parts of motorcycles, others at the rate of 12½ per centum ad valorem, or at the rate of 10½ per centum ad valorem, as parts of automobiles.

Plaintiff relies upon the conclusions reached in the decided case, the record of which has been received in evidence in this action, to support its contention that the instant merchandise consists of parts of internal-combustion engines of the carburetor type, which are not parts of automobiles or motorcycles.

Counsel for defendant is here seeking a reconsideration of those conclusions on the theory that the decision is at variance with settled precedents, citing *Magone* v. *Wiederer*, 159 U.S. 555; *United States* v. *Willoughby Camera Stores, Inc.*, 21 CCPA 322, T.D. 46851; *Steinway & Sons* v. *United States*, 23 Cust. Ct. 30, C.D. 1185; and *J. E. Bernard & Company, Inc.* v. *United States*, 30 Cust. Ct. 473, Abstract 57385. Specifically, issue is taken with the statement in the opinion that "chief use, even if established, is not sufficient for tariff purposes to constitute an article as part of another article."

It is not disputed, and the earlier record clearly established, that spark plugs of the kind here involved are essential components of internal-combustion engines which are adapted for use as automotive, marine, industrial, and aviation motors. That they are, in fact, parts of internal-combustion engines is not denied. Whether they should be so classified for tariff purposes is the question to be determined.

Although the spark plugs in issue were identified by type, as regular or standard, racing, platinum, silver, and shielded, it appears that it is their physical dimensions, specifically, the diameters of the thread cases, which affect their ultimate use. While the evidence showed that all types and all dimensions are susceptible of use, and are used, in both stationary and nonstationary engines, in the various fields enumerated, the frequency of their actual use appears to be determined by their respective sizes. Thus, the witness for plaintiffs in the incorporated case testified with respect to 10-millimeter spark plugs, that about 50 per centum was sold for use in automobile engines, about 1 or 2 per centum in tractors, 10 to 20 per centum in marine engines, 30 per centum in motorcycles, and that its use in stationary engines was almost negligible. With respect to his company's sales of 14-millimeter plugs, the witness gave the following breakdown:

60 per centum for automobiles, 5 per centum for tractors, 20 to 30 per centum for motorcycles, and 10 to 15 per centum for marine engines. He further stated that 18-millimeter plugs are divided more or less equally among marine, automotive, and industrial engines.

It was this proof, with its implication that 14-millimeter plugs, especially, were chiefly used in automotive internal-combustion engines, which occasioned the observation that "chief use, even if established, is not sufficient for tariff purposes to constitute an article as part of another article."

In holding that these spark plugs were not parts of automobiles, we invoked the seemingly settled rule applicable to the classification of parts, to wit, dedication and commitment to use with the article for which intended. As expressed in the oft-quoted case of *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873, that rule is as follows:

An article not an actual constituent of a manufacture can not be considered as part thereof unless it has been advanced to a point which definitely commits it to that specific class and kind of manufacture. An article commercially suitable and commercially used for the making of different things is a material which is just as much adapted to the production of all of them as it is to the production of any one of them, and until it has been finally appropriated to some definite manufacturing use and has been given the distinguishing characteristics which clearly identify it as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture.

The merchandise involved in the *American Bead Co.* case, *supra*, consisted of snaps, clasps, and swivels, which were shown to be used in the manufacture of chains, as well as in the making of necklaces. Their susceptibility for use in different types of jewelry, and for chains, was held to preclude classification as parts of chains.

A long line of decisions, many of which have been cited in the well-prepared brief of counsel for plaintiff, has consistently adhered to the principle of *United States* v. *American Bead Co.*, *supra*, and the fact of chief use in a particular application, when involved, does not appear to have governed the outcome. *Nyman & Schultz* v. *United States*, 14 Ct. Cust. Appls. 432, T.D. 42060; *United States* v. *Schenkers, Inc.*, 17 CCPA 231, T.D. 43669; *Davies, Turner & Co.* v. *United States*, 13 Cust. Ct. 190, C.D. 893; *B. Fu C. Mazza* v. *United States*, 28 Cust. Ct. 438, Abstract 56516; *Josiah Wedgwood & Sons, Inc., et al.* v. *United States*, 38 Cust. Ct. 430, Abstract 60566; *The American Import Co.* v. *United States*, 39 Cust. Ct. 9, C.D. 1894; *Delaware Paper Mills, Inc.* v. *United States*, 35 Cust. Ct. 221, Abstract 59234; *Davies, Turner & Co.* v. *United States*, 41 Cust. Ct. 306, Abstract 62130; *Randolph Rand Corporation et al.* v. *United States*, 45 Cust. Ct. 130, C.D. 2211; *H. H. Elder & Co. et al.* v. *United States*, 48 Cust. Ct. 397, Abstract 66651;

*James G. Wiley Co., a/c Ungar Electric Tools, Inc.* v. *United States,* 49 Cust. Ct. 199, Abstract 66961.

In the *American Import Co.* case, *supra,* the effect of chief use for a specific purpose upon the determination of what constitutes a part of a given article was brought in issue both by the collector's classification of the merchandise involved and by the proof. There, the merchandise consisted of steel split rings, classified within the provisions of paragraph 1535 of the Tariff Act of 1930, for all other fishing tackle and parts thereof, which, although concededly chiefly used as parts of fishing tackle, in connecting lures, were shown to have a wide variety of uses in other fields as fastenings or connections. The court stated the issue in the following language:

> The real question is, however, whether such chief use is sufficient to fix their tariff status as parts of fishing tackle. We are of the opinion that it is not; that, as claimed by the plaintiff, the tariff classification of "part" connotes dedication to use as such part.

After adverting to the rule of the *American Bead Co.* case, *supra,* the court further observed:

> We regard the principle thus enunciated as establishing the requirement of physical dedication or commitment to use as part of another article or thing to constitute one article or thing as part of another. As has been said, such element of dedication is lacking in the split rings at bar.

Notwithstanding the apparently settled state of the law on this question, counsel for defendant, nevertheless, argues that chief use is the test for parts. The position is sought to be upheld initially by reference to the case of *Magone* v. *Wiederer, supra,* wherein the Supreme Court of the United States approved a charge that stated that "the principal or chief use of the articles would determine their tariff classification."

What was involved in *Magone* v. *Wiederer* were shaped pieces of glass, sized and otherwise processed so as to be ready for use in clocks, and the evidence established that said pieces of glass were chiefly used as parts of clocks. It was also shown that pieces of glass of the same quality, though not necessarily of the exact sizes, were used for other purposes. This merchandise, which was classified under the Tariff Act of 1883 as articles of glass, cut, was claimed to be dutiable as parts of clocks. The trial judge charged the jury, in part, as follows:

> In determining this question, whether or not these articles are parts of clocks, it will not be necessary for you to say that they were exclusively used for that purpose. An article may be chiefly used for a certain purpose and be diverted from its principal use; somebody may put it to a purpose for which it was not originally intended. That could not, in my judgment, change its tariff nomenclature. The Supreme Court, in a case which I think is somewhat similar upon the facts, although relating to different sections of the statute, sustained a

charge to the jury "that the use to which the articles were chiefly adapted and for which they were used determined their character within the meaning of the statute . . . ." And so I will say to you, as the law of the case, as I understand it, that if you find that these articles were chiefly used as parts of clocks, that would determine their tariff classification. But it is entirely clear, upon the other hand, that they must be chiefly and principally used for that purpose. If they are articles, all, or one or more, as the case may be, which have no distinguishing characteristics, which are just as applicable for use in fancy boxes or in coach lamps as they are for clocks, just as applicable to the one use as to the other, then it would be entirely proper to say that they have no distinguishing characteristics as parts of clocks. They might be used for one purpose just as well as for another. And if you find as to those articles, or any of them, that they have several uses to which they are perfectly applicable, then as to those articles your verdict should be for the defendant.

Far from being a blanket indorsement of the proposition that chief use is the test for parts, the Supreme Court's affirmance is a very carefully phrased and limited one. The opinion recites:

* * * The charge * * * was manifestly correct, for in giving the rule of chief use the principles by which chief use was to be ascertained were fully stated exactly in accordance with the law subsequently announced by this court in *Magone* v. *Heller* [150 U.S. 70].

Clearly, a very essential consideration to the determination of whether the pieces of glass were parts of clocks, in the view of the trial judge, was the element of distinguishing characteristics which limited their use to clocks, and rendered them unsuitable for other general purposes. The whole tenor of the charge is one which emphasizes dedication to use and suggests that proof of chief use is but an indicium of such dedication. Adaptability for, rather than actuality of, chief use as parts of clocks appears to have been the ultimate underlying consideration.

This conclusion is borne out by the discussion of *Magone* v. *Wiederer* and *United States* v. *Willoughby Camera Stores, Inc., supra,* in the case of *United States* v. *Fibre Making Processes, Inc.,* 33 CCPA 110, C.A.D. 323, wherein, in affirming the proposition that chief use is not a controlling consideration with respect to classification in a "parts" provision, the court stated:

The sentence above quoted [from the decision in the *Willoughby* case], "of course, if they are parts of cameras and chiefly so used, the judgment must be affirmed," was interpreted by the dissenting judge to mean that in any event for an article to be a part of a thing it must be chiefly used in connection with it. The first part of the sentence is the important part, because if the tripods were "parts of cameras" that ended it and the fact that they were or were not chiefly used with cameras would not change the situation. This thought is made clear in the cited *Magone* v. *Wiederer* case if the latter part of the quotation from said decision relied upon by the dissenting opinion is carefully read. In that case it was pointed out by the Supreme Court in effect that if the pieces of glass cut into shape could *just as well be used in connection with things other than clocks and had several uses to which they were perfectly applicable they would not be parts of clocks.* [Italics quoted.]

If the cases of *Steinway & Sons* v. *United States* and *J. E. Bernard & Company, Inc.* v. *United States, supra,* upon which counsel for defendant also relies, are construed as unqualified holdings that chief use is the conclusive test for the classification of articles claimed to be parts, we would be inclined to observe that they represent a departure from the great weight of authority in this matter. But we believe that, although both opinions include statements with respect to the controlling effect of chief use, the conclusions reached were, in fact, predicated upon dedication for use and susceptibility for a variety of uses, respectively. The ivory strips involved in the *Steinway* case were shown to have the distinguishing characteristics of piano keys and were not adapted for any other commercial use. The pieces of vellum in *J. E. Bernard & Company, Inc.,* though actually used in the manufacture of drumheads, bore no evidence of dedication to use as parts of percussion instruments, and appeared to be capable of use for many other purposes. Hence, the ivory pieces were held properly classified as parts of musical instruments, the pieces of vellum, improperly returned as parts of percussion instruments.

The further reflection upon our prior observation that "chief use, even if established, is not sufficient for tariff purposes to constitute an article as part of another article," occasioned by defendant's arguments, in the instant case, convinces us that it was a proper statement of the law. We adhere to it and to the view that physical dedication or commitment to use as an essential constituent of some thing is the determining consideration of what constitutes a part for tariff purposes.

The only thing in which the subject spark plugs can be used as a constituent element is an internal-combustion engine of the carburetor type. But, so far as the instant record shows, neither the spark plugs, nor the engines into which they are fitted, are dedicated for use in automobiles, motorcycles, or any other vehicle or machine.

To the extent that the spark plugs in the present case have been stipulated to be the same in all material respects as the spark plugs in the decided case, and in view of the foregoing considerations, we find them to be provided for as parts of internal-combustion engines of the carburetor type, in both paragraph 353 and paragraph 372, as modified, *supra,* at the rate of 8¾ per centum ad valorem.

Counsel for defendant urges, however, that since the spark plug designated as item CLNY on the invoice covered by protest 61/12122 was not one of those involved in the incorporated case; has not been stipulated to be the same; and a sample thereof is not in evidence, the presumption of the correctness of the collector's classification as to it as parts of automobiles has not been overcome.

We find this argument without merit. We are of opinion that the evidence given by plaintiff's witness, who also testified at the first trial,

and whose knowledge of, and familiarity with, all of the spark plugs imported by plaintiff has not been questioned, suffices to establish that CLNY plugs are of the same character as the CLNH plugs involved in the decided case, and have the same applications and uses. It is clear from the uncontradicted testimony that those physical characteristics which distinguished the CLNY plug from the others affected its marketability and competitive value, not its function. In respect to the factor which is of significance in this inquiry, to wit, that the internal-combustion engines for which the CLNY plugs are fitted are not dedicated for use in automobiles, we find that they have been *prima facie* identified as falling within the same general class as the remaining plugs here involved.

We hold therefore that all of the spark plugs here involved are dutiable at the rate of 8¾ per centum ad valorem as parts of internal-combustion engines of the carburetor type. The claim in the protests to that effect is sustained.

Judgment will be entered accordingly.